# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2887

_____

United States of America,

        Appellee,

v.

Dionicio Perez,

        Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska
\*
\*
\*

_____

Submitted:   December 14, 1999

Filed:   January 11, 2000

_____

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

_____

McMILLIAN, Circuit Judge.


Dionicio Perez appeals from a final judgment entered in the United States District Court[1] for the District of Nebraska following his conditional plea of guilty to one count of possession with intent to distribute methamphetamine, in violation of 21

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

U.S.C. § 841(a)(1).  For reversal, Perez argues that the district court erred in denying his motion to suppress.  For the reasons stated below, we affirm.

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

**Background**

Perez was arrested on August 5, 1998, following a traffic stop and a warrantless search of his vehicle.  He was indicted on August 19, 1998.  He filed a motion to suppress evidence found in his vehicle and statements he made to the police at the time of his arrest.  The matter was referred to a magistrate judge,[2] who held a suppression hearing. The evidence presented at the hearing included the testimony of Perez and the testimony of the arresting officer, Trooper Frank Peck of the Nebraska State Patrol (NSP), as well as video and audio tape of the stop, created by a recording system in Peck's patrol car.  Following the hearing, the magistrate judge issued a report and recommendation.  See United States v. Perez, No. 4:98CR3074 (D. Neb. Dec. 15, 1998) (report and recommendation) (hereinafter "slip op.").

The following is a summary of the facts as found by the magistrate judge.  See id. at 2-6.  On August 5, 1998, Trooper Peck observed a black Toyota pickup truck traveling eastbound on Interstate 80 near Lincoln, Nebraska, appearing to be following too closely behind the preceding vehicle (in this case, a semi-tractor trailer), in violation of Nebraska statutory law.  Peck requested that another officer traveling in a separate patrol car, NSP Trooper Chris Bigsby, use a stopwatch to time the separation between Perez's vehicle and the semi-tractor trailer as the two vehicles passed by.  Bigsby timed

---

[2]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

the passing separation as 1.18 seconds, which he reported to Peck.[3] Peck testified that the NSP uses a two-second rule of thumb to determine whether there is sufficient following distance between two vehicles. Peck proceeded to pull over the pickup truck at approximately 1:00 p.m. Upon activating his overhead lights, his in-vehicle video camera turned on automatically. A wireless microphone clipped to Peck's uniform recorded the audio portion.

The pickup truck was driven by Perez, and there was also a passenger in the vehicle. While Peck was in the process of issuing the citation, he asked Perez to accompany him to the patrol car. Once in the patrol car, Peck questioned Perez about the nature and purpose of his trip and about his passenger. Perez stated, among other things, that the passenger was his cousin, but he could not remember the passenger's name. Peck walked over to the truck and asked the passenger some questions. The passenger stated that he and the driver (Perez) were related, but he could not recall how they were related; nor could the passenger remember their destination. Peck observed that the passenger's hands were shaking and he appeared nervous.

Peck returned to the patrol car, issued a warning ticket to Perez, and told Perez not to follow too closely behind other vehicles. Peck returned Perez's driver's license and registration along with the warning ticket at approximately 1:11 p.m. At that point, Peck asked Perez if he would answer some more questions, and Perez replied "okay." When asked if there were any pistols or narcotics in the vehicle, Perez said there were not. When Peck asked if he could search the vehicle for drugs, Perez said "yeah." Peck then asked whether it was a problem, and Perez said "Oh, no." Peck asked whether Perez understood what was being asked of him, and Perez said "yeah." At no point did Peck use a consent-to-search form written in Spanish.

---

[3]Bigsby testified that, while communicating with Peck, he may have told Peck that he observed two Hispanic individuals in the pickup truck.

Peck walked back to the pickup truck and asked the passenger to exit the vehicle. He conducted a patdown search of the passenger and told the passenger to move away from the vehicle. After initially searching the interior of the vehicle, Peck retrieved his dog from the back of the patrol car. Peck testified that, upon sniffing the vehicle, the dog alerted to the right rear passenger cab area. Peck again searched the interior of the vehicle and this time noticed irregularities in the driver's side speaker. Inside the speaker, he found a ball-shaped object wrapped in duct tape. He cut into the object and discovered a white powdery substance. Peck arrested Perez and the passenger on suspicion of possession of narcotics.

Based upon these facts, the magistrate judge made the following legal determinations: Peck had a valid basis for stopping Perez for a traffic violation, see id. at 7; the questions Peck initially asked Perez were within the scope of permissible inquiry and the answers given by Perez established reasonable suspicion to detain him, see id. at 8; Perez was never in custody prior to the search and therefore no Miranda violation occurred, see id. at 9-10; and Perez voluntarily consented to the search of his vehicle, see id. at 11-12. Accordingly, the magistrate judge concluded that no Fourth Amendment violation had occurred and recommended that Perez's motion to suppress be denied in its entirety. See id. at 12.

The district court adopted the magistrate judge's report and recommendation and denied Perez's motion to suppress. See id. (Feb. 3, 1999) (memorandum and order). Defendant entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Perez to 130 months imprisonment, five years of supervised release, and a special assessment of $100.00. See id. (June 23, 1999) (judgment). This appeal followed.

**Discussion**

On appeal, Perez argues that the district court erred in holding that (1) Peck had probable cause to conduct the traffic stop, (2) Peck had reasonable suspicion to detain him after the warning ticket was issued, and (3) he voluntarily consented to the search of his vehicle. We disagree.

We review the district court's findings of historical fact for clear error and its determinations of probable cause and reasonable suspicion *de novo*. See Ornelas v. United States, 517 U.S. 690 (1996). "It is well established that a traffic violation – however minor – creates probable cause to stop the driver of a vehicle." United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993). In the present case, the government established that Peck had probable cause to stop Perez for following too closely behind the preceding vehicle, in violation of Nebraska law. Moreover, Peck pursued a lawful line of questions in connection with the traffic stop. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994) (a reasonable investigation of a traffic stop typically includes asking for a license and registration, asking the driver to sit in the patrol car, and asking about destination and purpose of travel), cert. denied, 514 U.S. 1134 (1995). Perez's answers to Peck's lawful inquiry – for example, his failure to know the name of his passenger (his alleged cousin) – thereafter established reasonable suspicion for Peck to detain Perez for a reasonable period of time. See United States v. Barahona, 990 F.2d at 416 ("if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions").

We review for clear error the district court's finding that Perez voluntarily consented to the search of his vehicle. See United States v. Carrate, 122 F.3d 666, 670 (8th Cir. 1998) ("The voluntariness of a person's consent to search is a question of fact that we review under the clearly erroneous standard."). In the present case, the magistrate judge explained that finding as follows:

It is obvious from the videotape of the stop and [Perez's] testimony that English is not [Perez's] first language. However, on August 5, 1998 [Perez] responded to Peck in English and his responses indicated that he understood Peck's questions. I therefore conclude that [Perez's] limited English proficiency did not interfere with his ability to give knowing and voluntary consent to the search of his vehicle.

Slip op. at 11. Moreover, the magistrate judge noted that the stop took place in broad daylight on a busy interstate highway, that Perez, an adult, was not incapacitated in any manner at the time he consented to the search, that the detention had been brief, and that nothing was said or done to threaten or coerce him in any manner. See id. Upon review of the totality of the circumstances, we hold that the district court's finding that Perez voluntarily consented to the search of his vehicle was not clearly erroneous. See United States v. Carrate, 122 F.3d at 670 (notwithstanding defendant's limited ability to speak English and troopers' failure to provide defendant with a written consent-to-search form, the district court did not clearly err in finding that defendant voluntarily consented to a search of his car where he understood and appropriately answered all of the troopers' questions and the surrounding circumstances supported the finding of voluntariness).

## Conclusion

For the reasons stated, we hold that Perez's Fourth Amendment rights were not violated and his motion to suppress was properly denied. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.