# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2314

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Maria DeJesus Favela, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  January 9, 2001

Filed:    April 26, 2001

_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

After Maria DeJesus Favela pleaded guilty to possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), the district court[1] sentenced her to seventy months in prison and five years of supervised release. Favela appeals the denial of her motion to suppress methamphetamine found on her person following her arrest at the Kansas City International Airport. The issue is whether the arrest followed a consensual search tainted by an unlawful detention.  We affirm.

_____

[1] The HONORABLE SCOTT O. WRIGHT, United States District Judge for the Western District of Missouri.

On the day in question, Favela arrived at the Kansas City airport on a plane from California. Task Force Officer James Morgan and Senior Airman Paul Callaway watched Favela for about ten minutes as she walked back and forth from Gate 34 to a restroom and gift shop near Gate 30, and then sat for a few minutes near the Gate 30 exit before again proceeding to the gift shop entrance. Officer Morgan approached from behind, identified himself as a police officer, displayed his badge and identification, and asked Favela if he could speak with her. She agreed. Morgan stood approximately 1½ feet in front of Favela, while Callaway stood approximately 2½ feet to Morgan's left. Both were dressed in plain clothes and did not display weapons.

Morgan asked Favela if she spoke English. She replied, "a little." Favela told Morgan she was in Kansas City for one day to visit family and allowed him to review her identification and one-way airline ticket (purchased with cash the day before). Morgan asked if she had illegal narcotics or a large sum of currency in her possession. Favela responded that she did not. Morgan then asked if he could search Favela and her bag. Favela consented and handed her clear plastic bag to Morgan. While Callaway searched the bag, finding no drugs or other contraband, Morgan asked Favela to pull her loose-fitting shirt tight around her stomach area, demonstrating the request by pulling his own shirt tight. When Favela complied, Morgan and Callaway observed a bulge in the upper middle portion of her stomach area. Morgan pointed to the bulge and inquired what it was. Favela sighed, shrugged her shoulders, and looked at the floor. Morgan asked if he could touch the bulge. Favela nodded affirmatively. After feeling two hard bulges he believed to be illegal drugs, Morgan placed Favela under arrest. A search incident to the arrest uncovered 1.2 kilograms of methamphetamine taped to Favela's body. The entire encounter lasted approximately five minutes.

In denying her motion to suppress following an evidentiary hearing, the district court found that Favela initially agreed to talk to Officer Morgan and Airman Callaway and then voluntarily consented to the search of her bag, a search of her person, and to pulling her shirt tight at Officer Morgan's request. These findings are not clearly

-2-

erroneous. See United States v. McKines, 933 F.2d 1412, 1423 (8th Cir. 1991) (en banc) (standard of review). They distinguish this case from United States v. Eustaquio, 198 F.3d 1068, 1070 (8th Cir. 1999) (unconsented touching of a bulge in the defendant's clothing, without reasonable suspicion, violated her Fourth Amendment rights), and United States v. Green, 52 F.3d 194, 197 (8th Cir. 1995) (because defendant did not consent to search of her bag, detention of the bag for a dog sniff was a seizure requiring reasonable suspicion).

Favela argues the district court should nonetheless have suppressed the methamphetamine because her initial encounter with Morgan and Callaway was a Fourth Amendment seizure, the officers had no reasonable suspicion justifying that investigative stop, and therefore the consensual search of Favela's person and her subsequent arrest were tainted fruits of a Fourth Amendment violation. The district court rejected this contention, concluding that the officers' conduct in approaching and questioning Favela did not constitute a seizure. The issue of seizure turns on whether, considering the totality of the circumstances, "a reasonable person would have believed that [s]he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (plurality). We review this issue *de novo*. McKines, 933 F.2d at 1426.

Not every encounter between law enforcement officers and an individual constitutes a seizure for purposes of the Fourth Amendment. For example, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [and] by putting questions to him." Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality). Here, Favela argues that, when the officers stood in close physical proximity to her near the gift shop entrance and identified themselves as police officers, they created a situation in which a reasonable person would not have felt free to leave. We disagree. Morgan and Callaway were both standing in front of Favela, dressed in plain clothes and not displaying weapons. She was not surrounded, and there is no evidence that the distance between them was unusually close or threatening

for conducting a conversation in a busy public airport.  Officer Morgan properly identified himself and asked in a non-coercive manner if Favela was willing to talk. Favela was not physically touched or restrained, she was not told she must cooperate, and she was not asked or told to accompany the officers to a different location.  We agree with the district court that a reasonable person would have believed she was free to end the consensual conversation and leave.  See United States v. Gilbert, 936 F.2d 377, 378 (8th Cir. 1991) (per curiam); United States v. Dennis, 933 F.2d 671, 673 (8th Cir. 1991) (per curiam).

Favela argues at length on appeal that Officer Morgan lacked the reasonable suspicion necessary to justify a non-consensual investigative stop.  We need not consider that question because there was no seizure for Fourth Amendment purposes. Favela agreed to talk to Officer Morgan in a public place.  She consented to a search of her person that ultimately provided Officer Morgan with probable cause to arrest. The methamphetamine was then discovered in a lawful search incident to Favela's arrest.  In these circumstances, her motion to suppress was properly denied.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.