# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3027

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Paul Ray Jones, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  December 14, 1999

Filed:  June 18, 2001

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Paul Ray Jones pled guilty to a charge of possessing cocaine with intent to distribute it, but he reserved the right to appeal the district court's denial of his motion to suppress evidence.  We reverse the district court's ruling on the suppression motion and accordingly vacate Jones's conviction and sentence.

Jones arrived at Omaha's Eppley Airfield on a flight from Phoenix.  As Jones left the airport, Nebraska State Patrol Investigator  Richard Lutter noticed that rather than proceeding in a straight line, Jones walked around a bank of telephones.  Lutter found

this suspicious and began to watch Jones. He noticed that Jones looked behind him three times as he walked through the terminal and that Jones did not stop at the luggage claim, but walked straight out to the taxi stand. Lutter testified that as a trained narcotics investigator, when he sees someone go directly to the taxi stand, he suspects the person is trying to limit his or her time in the public area by moving "quickly from the airplane to a semi-secure or at least a mobile area." Lutter said that when he sees people who appear to be nervous and who proceed straight from the plane to the taxi stand, he will "talk to them on each and every occasion." Lutter therefore used his cellular phone to summon another officer and walked up to Jones at the taxi stand.

Lutter displayed his badge to Jones and told him that he was not in trouble or under arrest. Lutter asked Jones if he would speak with him. Jones turned around to talk to Lutter. Jones complied with Lutter's requests to show identification and his plane ticket, which showed Jones's flight originated in Los Angeles, a "source city" for drugs. Lutter noticed a bulge in the front part of Jones's waistband that he thought did not appear to be part of Jones's anatomy. Lutter suspected that the bulge might be illegal contraband secured to Jones's midsection. He told Jones his job was to look for people transporting narcotics and asked Jones if he had any narcotics. Jones said no. Lutter then asked if he could search Jones and his luggage, and Jones said, "Yes, you can search my bag," and handed Lutter the bag. By this time, the other officer had arrived and was standing beside Lutter.

Lutter then specifically asked for permission to search Jones's person. Jones took a step back. He said, "If there's a problem, I can take off all my clothes and you can empty out my bag." Lutter advanced a step toward Jones and said that it would not be necessary for Jones to take off his clothes, but that he wanted to search Jones's person. Jones again stepped back and repeated his offer to take off all his clothes. Lutter asked Jones about the bulge at his waist. Jones said he had had surgery, and he put his hands on the bulge. Although Lutter's report written immediately after the incident reports no further gestures, at the suppression hearing Lutter said that Jones

then held his arms out away from his body about ten to eighteen inches from his midsection, with his palms turned out. Lutter touched the bulge and thought it felt like "packaging that is consistent with the packaging of illegal narcotics." He arrested Jones and searched him. The bulge turned out to be a package of cocaine, and Lutter found another such bag strapped to Jones's back.

Jones moved to suppress the cocaine, arguing that Lutter stopped him without reasonable suspicion and searched him without probable cause. After a hearing, the magistrate judge recommended denial of Jones's suppression motion. The magistrate judge found that the encounter between Jones and Lutter was consensual: Jones expressly consented to the search of the bag, and he impliedly consented to Lutter's touching of the bulge. The magistrate concluded that after Lutter touched the package, there was "a basis" to arrest and search Jones.

The district court accepted the magistrate judge's report and recommendation. The district court found, "The encounter began as a consensual one and remained consensual." In particular, the district court found that Jones expressed consent to Lutter's touching his midsection by saying he would take off his clothes and by moving his arms away from his body when Lutter asked to search him. The district court also found that this expression of consent was voluntary: "Even though the Defendant's consent was not enthusiastically given and was implied by his actions and statements of being willing to remove his clothing, it was knowing and voluntary."

On appeal, Jones argues that he did not express consent by word or gesture to Lutter's touching him and even if his actions could be taken as consent, they were not voluntary.

The determination of whether Jones expressed consent is a question of fact, which we review for clear error. See United States v. Dupree, 202 F.3d 1046, 1049 (8th Cir. 2000). The precise question is not whether Jones consented subjectively, but

whether his conduct would have caused a reasonable person to believe that he consented. See United States v. Sanchez, 32 F.3d 1330, 1333-35 (8th Cir. 1994) (officer reasonably believed defendant consented where companion appeared to translate requests into language defendant understood, defendant signed consent to search, and companion assisted in opening truck). Consent can be inferred from words, gestures, and other conduct. See United States v. Mendoza-Cepeda, No. 00-3116, 2001 WL 527171 at *1 (8th Cir. May 18, 2001) (consent to touch midsection expressed by suspect raising arms in response to request); United States v. Gleason, 25 F.3d 605, 607 (8th Cir. 1994) (defendant consented to search for weapons and cheerfully assisted in search that discovered other evidence of robbery; officer could infer consent to general search from assistance and demeanor); United States v. Barahona, 990 F.2d 412, 417-418 (8th Cir. 1993) (consent to search of car where defendant read consent form, said, "You can look, sir," unlocked car doors, and waved arm toward car in "inviting manner").

The district court found that Jones's consent "was implied by his actions and statements of being willing to remove his clothing." By "actions" the district court apparently referred to Jones's gesture of opening his arms that Lutter testified about at the hearing, but omitted from his contemporaneous report. This gesture alone must bear the weight of the district court's finding of consent, because it is clear that Lutter did not interpret Jones's comments about taking off his clothing as a consent to Lutter touching him. Lutter testified that after he asked if he could search Jones, Jones stepped back as he said, "If there's a problem, I can remove my clothes and empty my bag." Lutter obviously did not interpret this as consent, because he asked Jones again for permission to search his person. Jones repeated the step back and repeated that he would take off his clothes. Lutter still did not proceed to search Jones on the strength of the "offer" to disrobe, but asked Jones about the bulge. After talking about the bulge, Lutter said he did not touch Jones until Jones opened his arms in the gesture that Lutter took to convey consent. If we were acting as fact finders, we would be reluctant to hang a finding of consent on this late-remembered gesture. Nevertheless, the district

-4-

court did so, and its credibility findings are well-nigh unreviewable, so long as the findings are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence in the case. See United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995) (credibility findings virtually unreviewable); Gleason, 25 F.3d at 607 (same); see generally Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) (district court's credibility determination can virtually never be clear error if based on coherent testimony not contradicted by extrinsic evidence and if finding not internally inconsistent). The district court's finding of consent is not internally inconsistent, nor is it based on testimony that is incoherent or implausible or that was contradicted by objective evidence. Moreover, the facts of Jones's case are extremely similar to our recent case of Mendoza-Cepeda, in which a suspect who raised his arms in response to the investigator's request to touch his midsection was found to have consented to the touching. 2001 WL 527171 at *1. The finding is therefore not clearly erroneous.

The question of whether an expression of consent is voluntary or coerced is also a question of fact, subject to review for clear error. See United States v. Perez, 200 F.3d 576, 579 (8th Cir. 2000); United States v. Hathcock, 103 F.3d 715, 719-20 (8th Cir. 1997). We have identified factors to be considered in making this determination, including personal characteristics of the defendant, such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the defendant and police preceding the consent, whether the defendant was free to leave or was subject to restraint, and whether the defendant's contemporaneous reaction to the search was consistent with consent. See id. at 719-20.

The district court found: "[T]he Defendant was an adult who was educated through the eleventh grade, has had experience with law enforcement, did not appear to be under the influence of drugs or alcohol, was in a public place, was not threatened

or punished, and did not protest the search." The district court found that Jones's consent was "knowing and voluntary."

Jones argues that Lutter's "relentless badgering" caused him to consent involuntarily. There is certainly no legal rule that asking more than once for permission to search renders a suspect's consent involuntary, see, e.g., Hathcock, 103 F.3d at 717, 720, particularly where the suspect's initial response is ambiguous, as Jones's response was in this case. On this record, it was for the district court to determine whether Lutter's persistence and the presence of the backup officer at the scene overwhelmed Jones and rendered his consent involuntary. We cannot say the finding of voluntariness was clearly erroneous.

Although we must uphold the district court's finding that Jones consented freely to Lutter's touching him, the district court's holding approving Lutter's subsequent arrest and search of Jones conflicts with our case law. The magistrate judge reasoned that once Lutter touched the bulge, there was probable cause to arrest and search Jones: "[F]ollowing the discovery of the 'bundle' on Jones' waist area, Investigator Lutter had a basis to detain and arrest Jones for a complete search." The district court adopted the magistrate judge's report and recommendation. In determining whether there was probable cause to make a warrantless arrest, we review findings of historical fact for clear error, but the existence of probable cause is subject to de novo review. See United States v. Tovar-Valdivia, 193 F.3d 1025, 1027 (8th Cir. 1999). Two of our cases present similar scenarios in which drug interdiction officers approached travelers after making observations that did not amount to reasonable suspicion and noticed bulges under their clothing. In Tovar-Valdivia, after the officer touched the bulges on the suspect's side and concluded the bulges were not part of the suspect's anatomy, he arrested the suspect. We held that the officer did not have probable cause: "The bulges could have been bandages about his body, a money belt worn about his ribs, or any number of non-contraband items." 193 F.3d at 1028. In United States v. Eustaquio, 198 F.3d 1068 (8th Cir. 1999), another case involving Lutter, Lutter noticed

the traveler had a bulge under her clothing and demanded that she pull her clothing tight against the bulge, which she refused to do. We held that these facts did not create even a reasonable suspicion that crime was afoot (not to mention probable cause) and that the district court erred in holding that they did. Id. at 1071. In a third case involving a traveler with a bulge in her midsection, United States v. Favela, 247 F.3d 838 (8th Cir. 2001), the suspect's conduct gave additional grounds for suspicion. The investigator in Favela knew that the suspect had paid for her one-way ticket from California in cash and that she was staying in Kansas City only one day. When the investigator asked Favela about the bulge above her stomach, she "sighed, shrugged her shoulders, and looked at the floor." Id. at 839. With Favela's consent, the investigator touched the bulge and found two hard bulges. Id. We held that there was probable cause for Favela's arrest. Id. at 840.

Before Lutter touched the bulge on Jones's midsection, the facts he had observed did not amount even to grounds for a reasonable suspicion of wrongdoing. Jones's walking around the phone bank, looking behind him, traveling without luggage, and arriving from Los Angeles are not sufficiently suggestive of crime to constitute reasonable suspicion. Cf. Eustaquio, 198 F.3d at 1070-71 (no reasonable suspicion from similar facts); United States v. Collins, 200 F.3d 1196, 1197 (8th Cir. 2000) (suspect arrived from source city, looked around, didn't stop for luggage, paid for ticket with cash; no reasonable suspicion). "Too many people fit this description for it to justify a reasonable suspicion of criminal activity." Eustaquio, 198 F.3d at 1071; accord United States v. Gray, 213 F.3d 998, 1001 (8th Cir. 2000) (walking in high crime area at 10:00 on cold night and crossing street in hurried fashion). Under Tovar-Valdivia and Eustaquio Lutter's determination that Jones had a bulge under his clothing that was not part of his body did not give Lutter probable cause to arrest and search Jones. Nothing in Jones's case augments the observation of the bulge to add up to probable cause. Unlike the traveler in Favela, who was unable to explain the bulge on her midsection, Jones told Lutter that the bulge on his midsection was from a recent surgery. After Lutter touched the bulges, he added nothing to his previous observations

-7-

except that he felt a "bundle" approximately ten inches long and six inches wide taped to Jones's person. He said he concluded the bulge was drugs because he had never encountered "anything of the nature of a hard, square bundle secured with tape. . . to a person that's traveling on the airplane that is not illegal narcotics or illegal contraband." He did not say that touching the package gave him reason to believe that the bulge was not a bandage, as Jones had implied it was. In fact, Lutter admitted on cross-examination that when he saw the bulge, it could have been a bandage, but "[b]ased on the information and observations of Mr. Jones, I believed it to be illegal contraband." In other words, he based his opinion in part on his earlier observations of Jones, which we have already determined were not as suspicious as Lutter thought they were. In sum, Lutter's testimony about touching the package does not supply any new facts supporting probable cause, but rather consists of a legal opinion we disapproved in Tovar-Valdivia and Eustaquio– that the mere presence of a bulge under a person's clothing, which is not part of the person's anatomy, amounts to evidence of drug possession. See Eustaquio, 198 F.3d at 1071 ("In Tovar-Valdivia, even after the officer felt a bulge and determined it was not a part of the defendant's anatomy, we held the officer did not have probable cause to arrest.") Lutter's legal conclusion is not entitled to evidentiary weight.

This case, like the others we have discussed, depends on its particular facts, and it is a close case. The factual scenario falls somewhere between Tovar-Valdivia and Eustaquio, which had been decided before we heard argument in this case, and Mendoza-Cepeda and Favela, which were decided after argument. Comparing our facts with those in the four other cases, we are convinced Jones's case falls closer to Tovar-Valdivia and Eustaquio. We must conclude that the arrest was not supported by probable cause.

The arrest was tainted, and the subsequent search and discovery of the cocaine were fruit of the arrest.

We vacate the conviction and sentence and order the evidence suppressed.

MAGILL, Circuit Judge, dissenting.

I concur in the Court's holding that Jones voluntarily consented to be searched by Investigator Lutter. However, because I conclude that Investigator Lutter had probable cause to arrest the defendant, I respectfully dissent from the majority's reversal of the defendant's conviction.[1]

"Probable cause to conduct a warrantless arrest exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Hartje, No. 00-2421, 2001 WL 579703, at *3 (8th Cir. May 31, 2001). In determining whether probable cause exists, we consider the "law enforcement officer's experience and familiarity with the practices of narcotics couriers." Cf. United States v. Condelee, 915 F.2d 1206, 1209 (8th Cir. 1990). The probable cause inquiry does not require us to "evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning." United States v. Nation, 243 F.3d 467, 470 (8th Cir. 2001).

At the time of the defendant's arrest, Investigator Lutter had been a narcotics investigator for four years, having received special training in that field. Investigator

---

[1]Jones's appellate briefs focus on whether he voluntarily consented to the search, and fail to address whether Investigator Lutter had probable cause to perform the search after touching the bulge in Jones's mid-section. A party's failure to raise an issue in his opening appellate brief constitutes a waiver of that issue. United States v. Hook, 195 F.3d 299, 310 (7th Cir. 1999); United States v. Cammisano, 917 F.2d 1057, 1061 n.1 (8th Cir. 1990). I thus have some doubt whether Jones even properly raised the argument that Investigator Lutter lacked probable cause to arrest.

Lutter had worked for two and a half years in commercial interdiction, which is the observation and interception of drug couriers traveling through bus stations, train stations, and airports. At Eppley Airfield alone, Investigator Lutter had made at least forty drug-related arrests, twenty of which involved narcotics strapped to individuals' bodies. Thus, Investigator Lutter was an experienced narcotics investigator, and his observations are due considerable deference.

In this case, Investigator Lutter noticed Jones: (1) embark a flight from Los Angeles via Phoenix, both drug source cities; (2) walk quickly in an abnormal pattern through part of the airport that most passengers do not walk when exiting an airplane; (3) turn his head and shoulders to look behind him at least three separate times; and (4) proceed directly to a taxi stand without picking up any luggage. Upon talking with Jones, Investigator Lutter further observed that: (5) Jones's ticket had been issued on the day of travel; (6) Jones stated that he came to Omaha to visit a cousin named Anthony, but when asked where Anthony lived, Jones did not respond; and (7) Jones became very nervous and agitated when Investigator Lutter asked to search his person.[2]

Most important was Investigator Lutter's observation and subsequent touching of the bulge in Jones's mid-section. Investigator Lutter testified that when he was talking with Jones, he noticed "a bulge that was not consistent with the natural contour of Mr. Jones's body." Jones subsequently provided consent for Investigator Lutter to touch the bulge. Investigator Lutter testified: "At the point that I felt the package and its consistency and the manner it was secured, I believed it to be controlled substance." Investigator Lutter then agreed with Jones's counsel's question: "And you squeezed your fingers together [around the bulge] because you want[ed] to get a feel for what's under there, right?" Given Investigator Lutter's training and experience in narcotics

---

[2]Although none of these individual factors amount to probable cause or even reasonable suspicion, I doubt the majority's assertion that the combined factors do not amount to reasonable suspicion.

investigation and commercial interdiction, Lutter's belief that the bulge he felt in Jones's mid-section contained illegal drugs provided him with probable cause to make the warrantless arrest, irrespective of the factors that created his initial suspicion. Together with those initial reasons for suspicion, I have little trouble concluding that Investigator Lutter had probable cause to arrest Jones.

Indeed, in United States v. Favela, No. 00-2314, 2001 WL 436060 (8th Cir. Apr. 26, 2001), this Court recently found probable cause to arrest under remarkably similar facts. In Favela, a police officer stopped the defendant at the Kansas City International Airport. Id. at *1. The officer asked the defendant to pull her shirt tight against her stomach. Id. When the defendant complied, the officer noticed a bulge around her stomach, and asked the defendant whether he could touch the bulge. Id. After gaining the defendant's consent, the officer felt two hard bulges that he believed to be narcotics. Id. The officer then placed the defendant under arrest and discovered drugs taped to the defendant's body in a search incident to the arrest. Id. This Court held that probable cause existed to effect the arrest. Id. at *2.

The factual scenario presented in Favela is, in all relevant respects, identical to the scenario presented here. Both defendants consented to searches of their persons, the police officers felt bulges they believed to be narcotics, and the officers then arrested the defendants. In Favela, this Court held that these facts provided the officer with probable cause to arrest. Id. at *2. In this case, however, the majority holds that these facts do not constitute probable cause, and suppresses the drugs discovered on Jones's body. In fact, given the existence here of several suspicious factors not present in Favela, such as Jones's repeated backward glances and agitated state, I believe this to be the "easier" case.

The majority, however, argues that Favela is distinguishable from this case because Jones told Investigator Lutter that the bulge in his mid-section resulted from a recent surgery, while the Favela defendant did not explain the source of the bulge in

-11-

his stomach. But what the officers in <u>Favela</u> and in this case felt when touching the defendants' mid-sections is vastly more important than how the defendants explained the bulges. And Investigator Lutter testified that when he felt the bulge in Jones's mid-section, given "the package and its consistency and the manner it was secured, I believed it to be controlled substance." In any event, surely the existence of probable cause does not depend on a defendant's ability to deceive the police.

The majority finds support for its holding that Investigator Lutter did not have probable cause to arrest Jones in this Court's opinions in <u>United States v. Tovar-Valdivia</u>, 193 F.3d 1025 (8th Cir. 1999) (per curiam), and <u>United States v. Eustaquio</u>, 198 F.3d 1068 (8th Cir. 1999). I believe that both <u>Tovar-Valdivia</u> and <u>Eustaquio</u> are distinguishable from this case. In <u>Tovar-Valdivia</u>, a police officer stopped the defendant at a bus terminal. 193 F.3d at 1026-27. While talking to the defendant, the officer noticed bulges under the defendant's shirt. <u>Id.</u> at 1027. The officer felt the bulges and determined only that they were not part of the defendant's body. <u>Id.</u> At this point, the officer handcuffed the defendant, which this Court held to be an arrest, thereby requiring probable cause. <u>Id.</u> The officer then unbuttoned the defendant's shirt and found drugs strapped to his body. <u>Id.</u>

In analyzing whether the police officer had probable cause to arrest the defendant after feeling the bulges around the defendant's mid-section, the <u>Tovar-Valdivia</u> court noted: "The officer testified that after touching the bulges, he still did not know what the bulges were; all he knew was that they were not part of the defendant's anatomy." <u>Id.</u> at 1028. The court further noted that the bulges under the defendant's shirt "could have been bandages about his body, a money belt worn about his ribs, or any number of non-contraband items." <u>Id.</u>

Here, by contrast, Investigator Lutter testified that the bulge in Jones's mid-section felt like "packaging that is consistent with the packaging of illegal narcotics." This testimony distinguishes this case from <u>Tovar-Valdivia</u>, where the officer admitted

-12-

that after touching the bulges "he still did not know what the bulges were; all he knew was that they were not part of [the defendant's] anatomy." 193 F.3d at 1028. Investigator Lutter had more information than merely knowing that the bulges were not part of Jones's body. In other words, unlike the officer in Tovar-Valdivia, Investigator Lutter's touching of Jones's mid-section informed him that the bulges were not "bandages about his body, a money belt worn about his ribs, or any number of non-contraband items." Id.[3]

This Court's decision in Eustaquio also is distinguishable. In Eustaquio, Investigator Lutter stopped the defendant at an Omaha airport. 198 F.3d at 1069. Investigator Lutter asked the defendant to pull her shirt tight against her body, but the defendant instead pulled her shirt away from her body. Id. Nevertheless, Investigator Lutter saw a bulge in the defendant's mid-section and, without the defendant's consent, poked the bulge. Id. The defendant jumped back and told Investigator Lutter that he could not touch her. Id. This Court, assuming that Investigator Lutter did not detain the defendant until he touched her, held that Investigator Lutter did not have reasonable suspicion to detain the defendant before he touched the bulge protruding from the defendant's mid-section. Id. at 1071.

The difference between this case and Eustaquio is that Jones consented to be searched by Investigator Lutter. By contrast, the defendant in Eustaquio never

---

[3]The majority finds relevant Investigator Lutter's statement that "when he saw the bulge, it could have been a bandage." But Investigator Lutter's concession that, before he touched the bulge, the possibility existed that the bulge might not contain illegal drugs is largely irrelevant. What is relevant is Investigator Lutter's belief *after* touching the bulge that Jones was carrying illegal narcotics. Regardless, the police are not required to possess metaphysical certainty that the suspect at issue is carrying illegal contraband. We merely require police officers to have "reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." Hartje, 2001 WL 579703, at *3.

consented to a search of her person. Id. at 1070; see also Favela, 2001 WL 436060, at *1 (distinguishing Eustaquio by noting that the defendant in Favela consented to a search of her person); United States v. Mendoza-Cepeda, No. 00-3116, 2001 WL 527171, at *2 (8th Cir. May 18, 2001) (distinguishing Eustaquio by noting that the defendant in Mendoza-Cepeda consented to a search of his person). Thus, the Eustaquio court refused to consider what Investigator Lutter felt when he touched the bulge in analyzing whether Lutter had reasonable suspicion to touch the defendant's mid-section. 198 F.3d at 1071. In this case, however, Jones gave Investigator Lutter consent to search his person; therefore, we must examine Investigator Lutter's belief that the object he felt through Jones's clothing was drugs in evaluating whether Investigator Lutter had probable cause to arrest the defendant after touching the bulge.

Finally, even if I were to conclude that Investigator Lutter did not have probable cause to arrest the defendant, I would not exclude the drugs discovered on the defendant's body. The defendant consented to a search of his person, providing Investigator Lutter with the consent needed to pull up the defendant's shirt and see the drugs taped to his body without resorting to a purportedly illegal arrest. I concede that this case does not fit neatly within any of the currently recognized exceptions to the exclusionary rule. However, I see no purpose in excluding the fruit of an invalid arrest where, as here, the officer has the consent necessary to discover the evidence before effecting the arrest but mistakenly arrests the defendant in the good faith belief that he has probable cause to do so. Accordingly, I respectfully dissent from the reversal of the defendant's conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-