# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1916

_____

United States of America

*Plaintiff - Appellee*

v.

Ricky Bagola

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: December 17, 2021
Filed: March 7, 2022
[Unpublished]

_____

Before SMITH, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

PER CURIAM.

Ricky Bagola pleaded guilty to one count of second-degree murder, in violation of 18 U.S.C. §§ 1111(a) and 1153. The district court[1] sentenced Bagola to 35 years'

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

imprisonment. He appeals the sentence, arguing that the district court erred by (1) applying a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, (2) increasing his criminal history category for being a career offender under U.S.S.G. § 4B1.1, and (3) making an erroneous fact finding regarding Bagola's location at the time of the offense during his sentencing. We affirm.

## I. *Background*
### A. *Prior Offenses*

In 2010, Bagola pleaded guilty to one count of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c). Sources of information (SOIs) identified Bagola as a known marijuana and cocaine dealer who sold both of those illegal substances from his residence. The SOIs reported purchasing cocaine or marijuana from him or accompanying him on drug runs to Denver, Colorado, as early as 2004.

In 2016, Bagola pleaded guilty to possession with intent to deliver marijuana, in violation of Wyo. Stat. Ann. § 35-7-1031(a). During a traffic stop, law enforcement found in Bagola's possession 39 pounds of marijuana, 183 prescription pills, a pill grinder with residue, and snorting tubes. Bagola acknowledged that he had (1) been hired to transport marijuana to the Pine Ridge Reservation in South Dakota, (2) transported illegal substances two to three times a week for approximately a year, (3) transported 150 to 200 pounds of marijuana on one occasion, and (4) purchased user-quantity prescription pills from the person who hired him. Bagola was released from custody and paroled for his 2016 Wyoming offense in November 2018.

### B. *Instant Offense*

In January 2020, Dani Jo Brown purchased methamphetamine for Keshia Hayes from Michael LeBeau in LeBeau's trailer on the Pine Ridge Reservation. Hayes was Bagola's girlfriend at the time. Brown and Hayes are cousins. After purchasing the methamphetamine, Brown delivered the methamphetamine to Hayes.

After inspecting the purchase, Hayes suspected that she received less methamphetamine from LeBeau than she had paid for. So, Hayes, Brown, and Bagola drove back to LeBeau's trailer to confront LeBeau. A firearm laid on the vehicle's floorboard.

After arriving at LeBeau's trailer, Hayes and Brown went to the door and knocked. Casey Long a/k/a Casey Weston, the decedent, let Hayes and Brown inside. Hayes and Brown argued with LeBeau; then, they walked out of the trailer and went back to the truck. They told Bagola that LeBeau refused to give Hayes more methamphetamine. Bagola then took the firearm from the truck and approached the trailer. He knocked on the trailer's door and the windows; when no one answered, he fired seven rounds into the trailer. Two of the rounds struck Weston. Five other adults and one infant occupied the trailer at the time of the shooting. Bullets struck only Weston. His wounds proved fatal.

An SOI reported that after the shooting, the SOI, Bagola, and Brown left town and stayed in Manderson, South Dakota, for about three days. During the SOI's first proffer interview with law enforcement, the SOI alleged that while they were in Manderson, Bagola told the SOI and Brown that there was a "hole in the back of this house for a reason" and that "the hole is big enough for both of you" referring to the SOI and Brown. R. Doc. 91, at 6. The SOI also alleged that Bagola sent the SOI a meme that said "F**k sex, let's take a stroll through the cemetery so I can show you where you going to lay if you f**k with me." *Id*. The SOI had been interviewed twice before during non-proffer interviews but had not mentioned the threats until this interview. Law enforcement never saw the referenced meme.

Brown stated to FBI Special Agent Erik Doell in one of her interviews that "she felt like people were after her." R. Doc. 114, at 14–15.

Law enforcement reviewed Bagola's jail phone calls and heard Bagola say to his brother:

> Hey, I'll send you the rest of my papers. You check your mail? . . . I'll send you the rest of my sh*t. Hey that . . . that little whino up the road right around the corner from ya up there, um . . [.] that little man. F***in, yeah bro. You're gonna need it. There's some sh*t I need you to read.

R. Doc. 91, at 6 (third and fourth alterations in original).

A federal grand jury indicted Bagola on one count of second-degree murder, in violation of 18 U.S.C. §§ 1111(a) and 1153, and one count of discharge of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). He pleaded guilty to second-degree murder. At sentencing, the government dismissed the remaining charge.

Bagola's presentence investigation report (PSR) recommended a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on his statement to the SOI and Brown in Manderson and the meme he sent the SOI. Bagola's prior convictions qualified him to be sentenced as a career offender. The PSR calculated his criminal history category to be VI. Bagola's criminal history category, without the career-offender classification, would have been IV.

Bagola objected to the application of the obstruction-of-justice enhancement, arguing that his jail call should not have been included in the PSR, the SOI's statements were unreliable, and the conduct described in the SOI's statements does not amount to obstruction of justice. He did not object to his classification as a career offender.

At the sentencing hearing, the government called Agent Doell as a witness to testify in support of the application of the obstruction-of-justice enhancement. Agent Doell testified about Bagola's statement to the SOI and Brown and the meme Bagola sent to the SOI. He also testified that Brown told him that she felt like people were after her. Agent Doell texted with, met with, and called Brown about her fear of retaliation. He additionally testified that, based on his experience, he believed that the "little man" Bagola referred to in his call was a firearm. Specifically, Agent Doell stated:

> Where it refers to "that little w[h]ino up the road" and "that little man, you're going to need it." I believe taken together, that would mean that [Bagola] is asking, since they know that . . . Brown spoke with the [FBI] regarding this incident, that some action be taken against her.

R. Doc. 114, at 18. Bagola did not object to Agent Doell's testimony. He only objected to the paragraphs in the PSR relating to the jail call, Bagola's statement to the SOI and Brown, and the meme he sent the SOI, as they pertained to the obstruction-of-justice enhancement.

The district court overruled Bagola's objections. The court found Agent Doell's expertise unchallenged and that the government had proven that Bagola's jail call, his statement to the SOI and Brown, and the meme that he sent the SOI supported the obstruction-of-justice enhancement. As to the SOI's statements during the proffer interview, the district court concluded:

> [I]t's not unusual that a witness who is present at the scene of a crime will provide information when interviewed but probably not [be] thorough.
>
> Once there's a proffer, a safe environment is created for an individual, and the interest is clearly on the part of law enforcement to take as much information as possible.

So . . . there's no way the source of information could know any of this would show up in a presentence report or that it's valuable or could affect the guidelines. When you're in a proffer setting, as [the SOI] was, it's very common that additional information that turns out to be of real consequences for submission [comes out], like the threats . . . .

*Id*. at 31.

Bagola requested a downward variance for a sentence of 15 years' imprisonment. The government opposed Bagola's variance request and requested a below-Guidelines range sentence of 25 years' imprisonment. The district court denied both requests.

Before pronouncing its sentence, the district court recalled the following facts surrounding the shooting:

Here, this starts out as a drug deal. People in a trailer sold drugs, so . . . Hayes could have methamphetamine. She gets back to . . . you and others, feels she was cheated. The money paid. The meth produced for the transaction wasn't enough. And so you and others go over to the house, to the trailer, knock on the doors, knock on the windows, try to get somebody's attention so you can deal with the idea that . . . Hayes was cheated on a drug deal.

You have a .22-caliber firearm on the floorboard of the vehicle. Hayes is driving. It's an intentional act, even in the context of a drug deal, to go over to somebody's residence with a firearm. There was a discussion inside the trailer. I don't know what that was about. It was an argument. There was not more meth provided, if I understand these facts correctly. And so you leave. Hayes leaves. Another person was there. They leave.

But that's not enough for you. This is an intentional act to retrieve the firearm, approach the residence, and fire seven rounds through the

door of the trailer. You knew there were people in that trailer. You had just been there. Whether you knew two-week old Mato was in a bedroom—he was named Bear, which is a very strong name, of course. You've got an infant in there, and you've got adults in there, and you've just interacted with these people. Absolutely no concern for the life of any of them. Couldn't have any concern for the life of any of them. Your anger, loss of impulse control, your intent was to harm people.

*Id*. at 67–68. Bagola did not object to the district court's statements.

In addition to the recounted facts, the district court based its sentence on the following considerations: (1) that "murder is among the most serious offenses any human being can commit against another"; (2) that Bagola is a "career offender"; (3) that he was "under a parole sentence at the time that [he] killed [the decedent]"; (4) that he is "in the highest criminal history category in the federal system"; and (5) the "totally senseless nature of [his] murderous conduct." *Id*. at 65, 69, 71, 72.

With a criminal history category of VI and a total offense level of 37, the PSR calculated Bagola's Guidelines range between 360 months' imprisonment to life imprisonment. The district court sentenced Bagola to 35 years' imprisonment.

## II. *Discussion*

On appeal, Bagola renews his objection to the two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. He also argues that the district court erred in determining his sentence by concluding that he is a career offender and by erroneously finding he had entered the trailer before shooting Weston.

### A. *Obstruction-of-Justice Enhancement under U.S.S.G. § 3C1.1*

Bagola argues that his statement to the SOI and Brown, the meme he sent the SOI, and his jail call did not support the district court's application of the obstruction-of-justice enhancement. We disagree.

"We review the district court's application of the [S]entencing [G]uidelines de novo and its factual findings for clear error." *United States v. Miller*, 511 F.3d 821, 823 (8th Cir. 2008). "Under the advisory Guidelines scheme, courts are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Lee*, 451 F.3d 914, 917 (8th Cir. 2006), *vacated on other grounds*, 552 U.S. 1090 (2008). "We give great deference to a district court's decision to impose an obstruction of justice enhancement, reversing only when the district court's findings are insufficient." *United States v. Cunningham*, 593 F.3d 726, 730 (8th Cir. 2010).

Bagola first argues that the district court erred by relying on Agent Doell's testimony because he lacked firsthand information of Bagola's statement to the SOI and Brown and about the meme that Bagola sent the SOI. Because Bagola did not object to the district court's consideration of Agent Doell's testimony at sentencing—he only objected to the inclusion of paragraphs in the PSR relating to the obstruction-of-justice enhancement—we review for plain error. *See United States v. Schlosser*, 558 F.3d 736, 739 (8th Cir. 2009). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Id*. (alteration in original) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)). "The burden is on the defendant to prove plain error." *Id*. at 740.

"Hearsay is admissible in sentencing hearings." *United States v. Tucker*, 286 F.3d 505, 510 (8th Cir. 2002). And "[a] sentence based on hearsay will be sustained if the testimony is reliable enough." *Id*. (citing U.S.S.G. § 6A1.3(a) (stating courts may consider evidence which might be inadmissible at other proceedings if information has "sufficient indicia of reliability")). "The determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case and is committed to the sound discretion of the district court." *Schlosser*, 558 F.3d at 740 (quoting *United States v. Cassidy*, 6 F.3d 554, 557 (8th Cir.1993)).

In *Tucker*, the defendant received a sentencing enhancement for being a leader or organizer in a bank fraud scheme based primarily on the testimonies of a co-defendant and an FBI agent. 286 F.3d at 510. He argued that their testimonies were based on statements made by others and thus should have been excluded on hearsay grounds. *Id*. We found the evidence sufficiently reliable to support the sentencing enhancement because the agent's testimony corroborated the co-defendant's testimony and was based on various interviews the agent had conducted with other co-defendants and others involved in the scheme during his investigation. *Id*. The defendant's cell phone records also contributed to the reliability of the evidence because they suggested that he was in contact with an individual involved in the scheme. *Id*.

The evidence here is similarly sufficiently reliable. Agent Doell's testimony corroborates the statements of the SOI and Brown and was based on his multiple interviews and communications with each of them. Beyond Agent Doell's testimony regarding Bagola's jail call, there was also a recording of the call. We conclude that Bagola failed to meet his burden of showing that the district court's reliance on Agent Doell's testimony during sentencing rises to the level of plain error. *See Schlosser*, 558 F.3d at 740.

Bagola next argues that the district court erred by relying on the SOI's allegations for the following reasons: (1) the SOI may have been motivated to obtain a possible sentence reduction when describing the threats for the first time during the proffer interview; (2) there was no indication that law enforcement saw the meme or confirmed that Bagola sent it; (3) and Brown's statements to law enforcement did not corroborate the SOI's statements because Brown did not specify that she thought Bagola or anyone connected to him was threatening her. The district court explained during the sentencing hearing that it is not unusual for an SOI to say more during a proffer interview than during initial interviews because the proffer interview provides greater safety and because law enforcement may seek more information. A district

court's credibility findings "are well-nigh unreviewable, so long as the findings are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence in the case." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001). Here, the district court's determination of the SOI's credibility was not based on internally inconsistent statements made by the SOI nor testimony that was incoherent, implausible, or contradicted. *See id*.

Bagola also argues that the district court erred by finding that his jail call supported the application of the enhancement. He contends that his statements did not threaten or request that any action be taken against anyone or attempt to intimidate or influence a witness. The district court found that Agent Doell credibly testified that Bagola's call used coded language to instruct his brother to use a firearm—the "little man"—to take action against Brown—the "little w[h]ino up the road"—for speaking to the FBI. R. Doc. 114, at 18. Bagola did not object to Agent Doell's testimony. Again, the district court's finding that Agent Doell was credible was not based on testimony that was incoherent, implausible, or contradicted by the evidence. *See Jones*, 254 F.3d at 695.

The district court did not err in applying the obstruction-of-justice enhancement.

B. *Criminal-History-Category Increase under U.S.S.G. § 4B1.1*

Bagola argues that the district court erred by finding that he is a career offender because his Wyoming conviction for possession with intent to deliver marijuana does not qualify as a predicate controlled substance offense. Specifically, he argues that the Wyoming statute under which he was convicted "encompassed hemp, which is excluded from the [Controlled Substance Act (CSA)]." Appellant's Br. at 15.

Bagola did not challenge the PSR's finding that he was a career offender, so his claim is reviewed under the plain-error standard. *See Schlosser*, 558 F.3d at 739.

Bagola has failed to establish error because the district court correctly followed applicable precedent. *See United States v. Henderson*, 11 F.4th 713, 718 (8th Cir. 2021) ("There is no requirement that the particular substance underlying the state offense is also controlled under [the CSA]."). The district court properly determined Bagola to be a career offender and validly increased his criminal history category to VI.

### C. *Bagola's Location Before the Shooting*

Bagola argues that the district court erred by basing its sentence on its inaccurate statements that Bagola had been inside the trailer before the shooting. *See* R. Doc. 114, at 67–68 ("There was a discussion inside the trailer. . . . And so you leave. . . . You had just been [in the trailer]. . . . [Y]ou've just interacted with these people.").

Bagola did not object to the district court's statements during the sentencing hearing, so his claim is reviewed under the plain-error standard. *See Schlosser*, 558 F.3d at 739.

Bagola argues that the district court's statements were erroneous and that the error was plain based on the parties' stipulated Factual Basis Statement. *See* R. Doc. 61, at 2 (stating that only Brown and Hayes, and not Bagola, went inside the trailer before the shooting). But for this factual error, Bagola asserts that he would have received a more favorable sentence.

Bagola is correct that the district *plainly* erred in finding that he had been in the trailer because only Hayes and Brown had gone inside the trailer before the shooting. But, on the instant record, Bagola cannot show that the statements affected his substantial rights. "'An error affects a substantial right if the error was prejudicial,' but an error is prejudicial in the sentencing context 'only if there is a reasonable probability that the defendant would have received a lighter sentence but for the

error.'" *United States v. Grimes*, 702 F.3d 460, 470 (8th Cir. 2012) (quoting *United States v. Miller*, 557 F.3d 910, 916 (8th Cir. 2009)). Bagola has not done so.

The district court gave the following reasons, in addition to Bagola's location before the shooting, for its sentence: (1) that "murder is among the most serious offenses any human being can commit against another"; (2) that Bagola made an "intentional act to retrieve the firearm"; (3) that he had "[a]bsolutely no concern for the life of any of [the individuals inside the trailer]"; (4) his "anger, loss of impulse control, [his] intent was to harm people"; (5) that he was "under a parole sentence at the time that [he] killed [the decedent]"; (6) that he is "in the highest criminal history category in the federal system"; and (7) the "totally senseless nature of [his] murderous conduct." R. Doc. 114, at 65, 68, 69, 71, 72. Whether Bagola entered the trailer had no impact on the court's explanation for the sentence. Based on the court's reasoning, we conclude that Bagola has not established a reasonable probability that but for the court's erroneous factual statement he would have received a more lenient sentence.

### III. *Conclusion*

Accordingly, we affirm the district court.

_____