# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 00-3116

_____

United States of America,      *

                                       *

           Appellee,       *

                                       *      Appeal from the United States

       v.                            *      District Court for the

                                       *      District of Nebraska.

Juan C. Mendoza-Cepeda,    *

                                       *

           Appellant.      *

_____

Submitted: February 13, 2001
Filed: May 18, 2001

_____

Before RICHARD S. ARNOLD, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Juan Mendoza-Cepeda appeals the district court's[1] judgment entered upon his conditional guilty plea to possession with intent to distribute methamphetamine. We affirm.

I.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Mendoza-Cepeda arrived in Omaha, Nebraska, on May 10, 1999, on a flight from Phoenix, Arizona. Sergeant Burns and Investigator Rasgorshek of the Commercial Interdiction Unit observed Mendoza-Cepeda exit the plane with a carry-on bag and decided to follow him. Mendoza-Cepeda did not claim any checked luggage, and he proceeded to the taxi stand. There, Sergeant Burns approached Mendoza-Cepeda, displayed his badge, and asked to speak with him. Mendoza-Cepeda handed his plane ticket and passport to Sergeant Burns. After returning the ticket and passport to Mendoza-Cepeda, Sergeant Burns began to explain his purpose at the airport. Mendoza-Cepeda told Sergeant Burns that he did not speak English. Using his rudimentary Spanish, Sergeant Burns asked Mendoza-Cepeda if he had any drugs. Mendoza-Cepeda repeated that he did not speak English. Sergeant Burns then asked if he could search Mendoza-Cepeda's carry-on bag. Mendoza-Cepeda handed his bag to Sergeant Burns and Investigator Rasgorshek searched the bag. No drugs were found. Sergeant Burns asked Mendoza-Cepeda if he could search him. Mendoza-Cepeda did not respond. Sergeant Burns then used gestures while asking Mendoza-Cepeda in Spanish if he could search Mendoza-Cepeda's boots. Mendoza-Cepeda held out one foot at a time for Sergeant Burns to search. Next, Sergeant Burns asked Mendoza-Cepeda if he could search Mendoza-Cepeda's torso. Mendoza-Cepeda did not respond. Sergeant Burns asked Mendoza-Cepeda "yes" or "no" in Spanish while pointing at Mendoza-Cepeda's torso. Mendoza-Cepeda raised his arms and allowed Sergeant Burns to touch his torso. Sergeant Burns felt bundles taped around Mendoza-Cepeda's waist. Sergeant Burns arrested Mendoza-Cepeda and took him back to an office where the bundles were revealed to contain methamphetamine.

A Spanish-speaking Immigration and Naturalization Service agent was contacted to help with questioning Mendoza-Cepeda. Agent Wardy read Mendoza-Cepeda his <u>Miranda</u> rights in Spanish and translated the questions and answers between Investigator Krans and Mendoza-Cepeda. Agent Wardy testified that Mendoza-Cepeda indicated that he understood his rights. Mendoza-Cepeda sought to suppress the evidence seized and the statements he made. His motion to suppress was denied.

Mendoza-Cepeda entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress, and was sentenced to 70 months of imprisonment followed by five years of supervised release. Mendoza-Cepeda appeals.

II.

We review the question of whether a seizure has occurred de novo and the district court's determination of voluntariness for clear error. United States v. White, 81 F.3d 775, 779-80, (8th Cir.), cert. denied, 519 U.S. 775 (1996).

Mendoza-Cepeda asserts that the encounter at the airport with the officers of the Commercial Interdiction Unit was an investigatory stop which, under the Fourth Amendment, required reasonable suspicion. We disagree. Although a person may not be seized without a reasonable suspicion of criminal activity, "the [Fourth] Amendment is not triggered by a consensual encounter between an officer and a private citizen." United States v. Perez-Sosa, 164 F.3d 1082, 1084 (8th Cir. 1998), cert. denied, 525 U.S. 1186 (1999). A consensual encounter, however, may become a seizure if there is a "threatening presence of several officers, [a] display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Hathcock, 103 F.3d 715, 718-19 (8th Cir.)(quoting United States v. White, 81 F.3d 775, 779 (8th Cir. 1996)), cert. denied, 521 U.S. 1127 (1997). Here, only two officers of the Commercial Interdiction Unit were present, no weapon was displayed, Mendoza-Cepeda was not physically touched until after he consented to the touching of his torso, and the language used by Sergeant Burns does not indicate that Mendoza-Cepeda's compliance was compelled. The encounter was in a public place, and Mendoza-Cepeda was not in custody at the time. The encounter between Sergeant Burns and Mendoza-Cepeda at the taxi stand did not constitute a seizure.

3

Mendoza-Cepeda relies on two cases, United States v. Eustaquio, 198 F.3d 1068 (8th Cir. 1999), and United States v. Tovar-Valdivia, 193 F.3d 1025 (8th Cir. 1999), to support his proposition that the encounter at the taxi stand was a detention which lacked reasonable suspicion. Tovar-Valdivia was stopped and questioned by an officer after arriving in Kansas City, Missouri, on a Greyhound bus. The officer asked to see his bus ticket and to search his bag. Upon noticing bulges under his shirt, the officer reached out and felt the bulges without Tovar-Valdivia's consent. Tovar-Valdivia, 193 F.3d at 1027. Similarly, Eustaquio was stopped at the taxi stand at the Eppley Airfield in Omaha, Nebraska, and questioned by two members of the Commercial Interdiction Unit. Eustaquio allowed the officer to search her luggage and her jacket. Then, the officer asked her to pull her shirt tight against her upper body. Eustaquio did the opposite and pulled her shirt away from her body. The officer reached out and poked what he believed to be a bulge under her shirt. Eustaquio, 198 F.3d at 1070. Both of these cases can be distinguished on the basis of consent. Unlike Mendoza-Cepeda, neither Tovar-Valdivia nor Eustaquio consented to the officers' physical contact with their torsos. The district court found that Mendoza-Cepeda, however, did consent and that consent prevented his encounter with the officers from escalating into a seizure.

Next, Mendoza-Cepeda contends that the search of his torso was not valid because it was performed without a warrant and without voluntary consent. Mendoza-Cepeda argues that his inability to understand English prevented him from being able to consent to the search. The voluntariness of one's consent to a search depends upon the totality of the circumstances. United States v. Garcia, 197 F.3d 1223, 1226 (8th Cir. 1999). The district court considered the following factors when determining the totality of the circumstances: the defendant's age, intelligence and education; whether the defendant was chemically intoxicated; whether the defendant knew that he did not have to consent; the length of the encounter; police intimidation; whether the defendant relied upon promises or misrepresentations made by the police; whether the defendant was in custody; whether the encounter occurred in a public or secluded place; and

4

whether the defendant objected to the search. <u>United States v. Sanchez</u>, 156 F.3d 875, 878 (8th Cir. 1998).

The district court found that Mendoza-Cepeda is an adult, who did not appear to be under the influence of any substance at the time he was questioned by Sergeant Burns. The district court recognized the fact that Mendoza-Cepeda was not told that he did not have to consent, but despite this fact the district court concluded that Mendoza-Cepeda was not intimidated into consenting by the officers and that no promises were made. Additionally, the district court relied on the fact that the encounter occurred in public and that Mendoza-Cepeda did not object to the search. The district court did not believe that Mendoza-Cepeda's purported inability to speak English negated his voluntariness because Mendoza-Cepeda appeared to understand Sergeant Burns' request, both verbal and through the use of gestures, to search his carry-on bag and his torso. The district court recognized a statement made at the suppression hearing where Sergeant Burns noted that Mendoza-Cepeda spoke clearly when he told Sergeant Burns that "I don't speak English," and Sergeant Burns did not detect any accent. (Dist. Ct. Mem. Op. and Order at 2). Finally, the district court concluded that the Fourth Amendment "requires only that the police reasonably believe the search to be consensual," <u>id.</u> at 6 (quoting <u>Sanchez</u>, 156 F.3d at 878), and that in considering the totality of the circumstances, the officers could have reasonably believed that Mendoza-Cepeda consented to the search. We are not convinced that the district court's finding of voluntariness is clearly erroneous.

Lastly, Mendoza-Cepeda argues that because he was in custody at the time of the questioning at the taxi stand, he should have been given his <u>Miranda</u> warnings. As already addressed earlier, we do not believe that Mendoza-Cepeda was in custody at the time he was questioned or searched at the taxi stand in front of the airport. Consequently, no <u>Miranda</u> warnings were required. <u>See</u> <u>United States v. Rorex</u>, 737 F.2d 753, 755 (8th Cir. 1984).

## III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

     Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.