# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-1279
_____

United States of America

*Plaintiff - Appellee*

v.

Pamela Michelle Alloway

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 18, 2021
Filed: February 22, 2022
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Sheriff's deputies found guns and meth at Pamela Alloway's house while assisting with a child welfare check. Alloway was charged with knowingly possessing firearms in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). She appeals the denial of her motion to suppress the drugs and guns. Because the

district court[1] did not err in finding that Alloway consented to the search, and the deputies did not exceed the scope of that consent, we affirm.

I.

The Missouri Division of Family Services (DFS) hotline received a call reporting drug activity, verbal abuse of children, and weapons at the house where Alloway lived with her boyfriend and his two minor children. A DFS social worker went to the house to do a welfare check that night. Two sheriff's deputies, Travis Cochenour and Jeremiah Bragg, went along. Alloway saw them drive up and went outside to meet them. They told her the reason for their visit, and she invited them into the house. Alloway told them to wait in the kitchen while she went upstairs to get the older child.

While the social worker interviewed the child, Deputy Cochenour saw three loaded rifles. Where those rifles were is disputed. After confirming that Alloway was a felon, he arrested her. At that point, Alloway's boyfriend came home. He told deputies that he was also a felon, and that there was another gun in the bedroom safe. When he refused to open the safe, he was also arrested. While the deputies were on the phone getting a search warrant for the safe, they spotted more guns in plain sight in the bedroom. They obtained and executed two search warrants for the residence. All told, they found 13 guns, over 125 grams of meth, and other drug evidence.

Alloway moved to suppress all of the evidence. She argued that Deputy Cochenour found the first three guns as a result of an unconsented, warrantless search, and that everything discovered after that was the fruit of the poisonous tree.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

The magistrate judge[2] recommended denying the motion after an evidentiary hearing. In the report and recommendation, the magistrate found that "Alloway invited the two deputies . . . into the residence" and that "[u]pon entering the house, Dep. Cochenour observed multiple rifles . . . leaned up against a door." The magistrate also noted that in making his factual findings, "where there were conflicts, the officers were more credible witnesses."

The district court considered the evidence in the record and adopted the report and recommendation. Alloway argued that: (1) she did not consent to the deputies entering the house, and (2) if she did consent to the entry, she only consented to them being in the kitchen. The guns, she said, were in the living room, and Deputy Cochenour could not have seen them from the kitchen because of a curtain covering the living room doorway. The district court found that "the record shows the deputy had permission to enter the house with the social worker," and that "Cochenour saw the firearms without intruding on the living room premises." Alloway now appeals.

II.

On appeal of the denial of a motion to suppress, we "review[] legal conclusions de novo and factual findings for clear error." *United States v. Nevatt*, 960 F.3d 1015, 1020 (8th Cir. 2020) (citation omitted) (cleaned up). We will affirm the denial unless "the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Garcia*, 888 F.3d 1004, 1008 (8th Cir. 2018) (citation omitted). "A credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." *Nevatt*, 960 F.3d at 1020 (citation omitted).

---

[2]The Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

## A.

Generally, a warrantless search of or entry into a home violates the Fourth Amendment. But "a warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." *United States v. Garcia-Garcia*, 957 F.3d 887, 892 (8th Cir. 2020) (citation omitted) (cleaned up). Consent may be express or implied. *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006). The question is not whether the defendant subjectively meant to consent, but whether her conduct would cause a reasonable person to believe she consented to the search. *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

Alloway argues that she only consented to the social worker entering the house, based on the fact that the social worker, rather than the deputies, asked to come in. But the record plainly shows that Alloway consented to the deputies coming inside with the social worker. At the suppression hearing, Alloway herself testified that "I told them [the 'three individuals'] that they could come in the kitchen and I would go get [Child]." Deputy Cochenour's testimony at that hearing corroborates this: "She [Alloway] invited us in." So does Deputy Bragg's: "She said we could come on in, and I held the door as everybody entered."

The district court didn't err when it found that the deputies had permission to enter the house—telling someone to "come in" is express consent to entry for Fourth Amendment purposes.

## B.

An officer can still violate the Fourth Amendment by exceeding the scope of consent. *See United States v. McMullin*, 576 F.3d 810, 816 (8th Cir. 2009). We analyze the scope of consent using an objective reasonableness standard. *Id.* at 815. Alloway argues that she only consented to the deputies entering the kitchen, and that they went into the living room.

At the suppression hearings, the parties disagreed about the guns' location, and whether there was a curtain hanging across the living room doorway. Alloway said that the guns were in the living room, and that because the curtain was closed, the deputy couldn't possibly have seen the guns without entering the living room. The deputy testified that the guns were in the kitchen, in plain view.

The district court found that Deputy Cochenour "saw the firearms without intruding on the living room premises." It credited the version of events in the deputy's report, which said that he saw the guns "in plain view 'leaning against the wall next to [him]' while he was 'standing in the [kitchen] doorway where [he] entered the house.'" The court explained why it believed the deputy: his version was written down while his memory was fresh; it was in a formal report that was used to obtain a search warrant, so there was professional incentive not to fabricate it; there were four or five potential witnesses (including the social worker and the children) who could challenge his version if he fabricated it; and the court didn't find Alloway's self-serving testimony to be as credible. The district court also noted that the magistrate judge found the deputy more credible, although it was careful to note that it was not abdicating responsibility to the magistrate, and exhaustively explained how it weighed the magistrate judge's recommendation.

The district court was presented with two conflicting but plausible versions of the events. There is nothing in the record that bolsters Alloway's testimony—or discredits the deputy's—in a way that leaves us with "a firm and definite conviction that a mistake has been made." *Garcia*, 888 F.3d at 1008 (citation omitted). The district court did not clearly err in determining that the deputies could see the guns from outside the living room, and that they did not exceed the scope of consent to enter the kitchen.

III.

We affirm.

_____