# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3483
_____

United States of America

*Plaintiff - Appellee*

v.

Connie Estrella Moreno

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 20, 2020
Filed: February 24, 2021
_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Connie Estrella Moreno appeals the district court's[1] denial of her motion to suppress evidence seized as a result of a protective frisk. Because Sergeant Meola

_____

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

performed a lawful, protective search based on reasonable articulable suspicion that Moreno may have been armed, we affirm.

## I. BACKGROUND

On September 13, 2018, several plain-clothes officers with Nebraska State Patrol were conducting drug surveillance at the Trailways bus station in Omaha. Trooper Brandon Wilkie was working alongside Sergeant Thomas Meola, a supervisor with the Drug Enforcement Agency Task Force in Omaha who has received counter-terrorism training. At approximately 6:00 a.m., the officers noticed a new, black hard-side suitcase on the curb, along with other pieces of luggage that had arrived from Denver, Colorado. The suitcase appeared suspicious to the officers for two reasons: it did not have a personal luggage tag, and the phone number listed on the bus company's destination tag was a series of identical digits.

Trooper Wilkie asked a group of passengers standing nearby whether the bag belonged to them, and Moreno eventually claimed it. Trooper Wilkie identified himself, asked to see Moreno's bus ticket, and asked about her travel plans. Moreno provided identification along with her ticket. Moreno stated that she was traveling from Las Vegas to New York. Her ticket, however, showed that she was traveling from Denver to Chicago. Trooper Wilkie noted the discrepancy, and he observed that Moreno's hands were shaking. Sergeant Meola noticed that the destination tag on Moreno's suitcase indicated it was checked-in at Denver, not Las Vegas. He also found it suspicious that Moreno had not checked the suitcase to her final destination, which, as a result, required Moreno to claim her luggage at every stop, then recheck it to make sure it got placed back on the bus. In Sergeant Meola's experience, this behavior was typical in drug operations.

Trooper Wilkie asked to search Moreno's bag, and she consented. He did not find any drugs or other incriminating evidence in the suitcase. While Trooper Wilkie

searched the bag, Sergeant Meola walked over to Moreno, who was wearing a blanket around her shoulders. Sergeant Meola noticed that Moreno's left arm appeared to be out-of-place, and she was holding the blanket together at her waistline in an unnatural way. According to Sergeant Meola, Moreno appeared to be carrying something attached to her body located underneath the blanket, which he did not believe was a bandage or a back brace, but he later testified could have been a book. When Sergeant Meola asked Moreno whether she was carrying anything on her body, Moreno responded "no" three times, emphatically. Sergeant Meola believed Moreno's behavior showed signs of stress.

Sergeant Meola asked Moreno to open her blanket, and she turned around to do so, facing away from the officers. When Sergeant Meola asked Moreno to turn towards him, she complied, but she bent forward at the waist. Sergeant Meola viewed Moreno's behavior as odd. Although Moreno's shirt hung loosely, Sergeant Meola saw the outline of an object at her side, which he believed could be a gun or a bomb. Sergeant Meola later explained that he was on heightened alert because of the proximity to the September 11th anniversary, and the bus station could be a soft target for terrorist attacks, especially given its lack of other security.

Sergeant Meola again asked Moreno if she had anything strapped to her body, and she said "no." Without permission, Sergeant Meola reached under the blanket and touched her clothing where he could see the outline of the object attached to her body. Based on his experience, Sergeant Meola immediately determined the object was a kilo-sized brick of drugs. Sergeant Meola quickly handcuffed Moreno and led her to an administrative office where she consented to a search. Officers recovered two large bricks attached to her midsection, which later field-tested positive for heroin.

Moreno was charged with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Moreno moved to suppress the drugs

on the basis that Sergeant Meola's protective search was not based on reasonable, articulable suspicion. After an evidentiary hearing, the magistrate judge issued a Report and Recommendation, recommending the motion to suppress be granted. The government objected and the district judge entered an order denying the motion to suppress.

Moreno entered a conditional guilty plea, reserving her right to appeal the denial of the motion to suppress. The district court sentenced Moreno to a term of 24 months' imprisonment, followed by three years of supervised release. This appeal followed.

## II. DISCUSSION

On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error, and its legal conclusions *de novo*. United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020). "We affirm unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008) (quotation omitted).

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. CONST. amend. IV; Terry v. Ohio, 392 U.S. 1 (1968). The law nevertheless permits a law enforcement officer to conduct "a limited, warrantless search for the protection of himself or others nearby in order to discover weapons" so long as the search is based on "a reasonable, articulable suspicion that the person may be armed and presently dangerous." United States v. Roggeman, 279 F.3d 573, 577 (8th Cir. 2002). When evaluating the lawfulness of a protective search, "the totality of the circumstances – the whole picture – must be taken into account." United States v. Cortez, 449 U.S. 411, 417 (1981). Under an objective standard, the question is

"whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.

We first consider whether Sergeant Meola acted lawfully when he performed a protective search of Moreno. Moreno contends Sergeant Meola lacked reasonable suspicion because the evidence did not suggest that she was armed or dangerous. However, "[t]he level of suspicion necessary to constitute reasonable suspicion that will, in turn, justify a protective pat-down search 'is considerably less than proof of wrongdoing by a preponderance of the evidence' and 'is obviously less demanding than that for probable cause.'" Roggeman, 279 F.3d at 578 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Both officers testified that Moreno initially raised their suspicions based on her new suitcase, the lack of a personal tag, and the seemingly bogus telephone number listed on the destination tag. Sergeant Meola also noted that she did not check her bag to the final destination, suggesting that she wanted to keep an eye on it. Moreno's response to Trooper Wilkie's question about her itinerary (Las Vegas to New York) did not match her ticket (Denver to Chicago), and her hands were visibly shaking. Sergeant Meola observed an obvious bulge on Moreno's body, and when questioned, Moreno emphatically denied carrying anything on her body and attempted to obstruct Sergeant Meola's view by turning away from him and then bending forward. Based on Sergeant Meola's counter-terrorism training, the proximity in time to the September 11th anniversary, his observation of a bulge on Moreno's body that she repeatedly denied existed and attempted to conceal, Moreno's odd behavior, and the lack of other security at the bus station, Sergeant Meola articulated a reasonable concern for his safety. Together, we find these facts sufficient for the officers to suspect criminal activity was afoot and to have a reasonable articulable suspicion that Moreno may be armed. Terry, 392 U.S. at 30.

The facts of this case are distinguishable from cases relied on by Moreno. In United States v. Eustaquio, 198 F.3d 1068 (8th Cir. 1999), we reversed the district court's denial of a motion to suppress because there was no basis for suspicion of criminal activity, and the officer performed the brief frisk as a "reflex" when he noticed a bulge in the defendant's shirt. In United States v. Jones, 254 F.3d 692 (8th Cir. 2001), the officers never suspected the defendant was armed, and the defendant gave a plausible explanation for the bulge in his waistband – that he recently had surgery.

Unlike in the cases cited by Moreno, Sergeant Meola articulated a specific concern that Moreno was armed with a bomb or other weapon and did not act on mere reflex. Sergeant Meola had a basis to suspect criminal activity when Moreno repeatedly and emphatically denied the existence of an obvious bulge under her clothes and when pressed further she tried to conceal it from law enforcement. Sergeant Meola "need not be absolutely certain" that Moreno was armed; the question is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27. We find that Sergeant Meola was warranted in performing a brief protective search to determine whether, in fact, the bulge at Moreno's side was a weapon or bomb. See Roggeman, 279 F.3d at 579–80 (officer's observance of a bulge in suspect's pants was a "substantial factor" in justifying the protective frisk); see also United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction.").

Moreno also argues the protective search exceeded permissible bounds under the law. A protective frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, 392 U.S. at 26. "If the protective search goes beyond what is necessary to

determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). In Dickerson, the Supreme Court acknowledged that – at times – when conducting an otherwise lawful protective frisk for weapons, an officer may discover contraband through the sense of touch. Id. at 375–76. This concept has been referred to as "plain touch" or "plain feel." Bustos-Torres, 396 F.3d at 944. "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . ." Dickerson, 508 U.S. at 375.

Moreno points to United States v. Aquino, 674 F.3d 918 (8th Cir. 2012), to support her argument that Sergeant Meola exceeded the scope of a permissible frisk under Terry. In Aquino, we held the officers exceeded the scope of a permissible search when they handcuffed the suspect and reached under his pant leg to retrieve contraband without first establishing probable cause. Id. at 925–26. We explained that "an officer's observation of a concealed bulge, standing alone, does not amount to probable cause to support an arrest." Id. at 924. But, the circumstances in Aquino are distinguishable from the facts before us because in Aquino the officers skipped the protective search. "Instead of conducting a pat down to determine if the concealed bulge on Aquino's leg was a weapon which might threaten his safety, [the officer] immediately performed a more intrusive search by lifting Aquino's pant leg to examine his leg underneath his clothing." Id. at 925. By contrast, Sergeant Meola conducted a limited frisk of Moreno, based on reasonable articulable suspicion, to determine whether she was armed.

It is also significant that Sergeant Meola used the least intrusive means reasonably necessary in conducting the protective search. United States v. Correa, 641 F.3d 961, 967 (8th Cir. 2011); see Roggeman, 279 F.3d at 577 (protective search must be "reasonably designed to discover concealed weapons"). He did not reach

under Moreno's clothing – he briefly touched an area on top of her clothes, that was visible to him after Moreno had lifted the blanket. See United States v. Hawkins, 830 F.3d 742, 745 (8th Cir. 2016) ("Though a pat-down is often the least intrusive way to search for a hidden firearm, concern for officer safety may justify lifting clothing . . . ."); Aquino, 674 F.3d at 925 ("Searching under articles of clothing, whether it be a man's pant leg or a woman's blouse, is necessarily more intrusive than a pat down."). When Sergeant Meola touched the suspicious object, it was "immediately apparent" to him that the object was contraband. United States v. Cowan, 674 F.3d 947, 953 (8th Cir. 2012). Sergeant Meola's targeted, protective search was sufficiently limited to dispel his concerns that the bulge may have been a weapon. The district court did not err in denying Moreno's motion to suppress.

## III. CONCLUSION

Sergeant Meola performed a lawful, protective search based on reasonable articulable suspicion that Moreno may have been armed. We affirm.

GRASZ, Circuit Judge, concurring.

I concur in the court's opinion in full. I write separately to emphasize this is a unique case, and it should not be read expansively to broadly justify warrantless protective searches. As the court states, the constitutionality of such searches depends on the totality of the circumstances, and the whole picture must be taken into account. See United States v. Cortez, 449 U.S. 411, 417 (1981).

Protective frisks are permissible only when there is reasonable suspicion "that criminal activity may be afoot" *and* a reasonable officer could conclude the suspect "may be armed and presently dangerous." United States v. Gray, 213 F.3d 998, 1000 (8th Cir. 2000) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Whether the second criterion is satisfied in the present case is in my view an extremely close call. The

Supreme Court has told us what a protective search is *not*—a search for contraband or evidence of a crime. See Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). And the Supreme Court has also made it clear that a protective search "must be strictly 'limited to that which is necessary for the discovery of weapons.'" Id. (quoting Terry, 392 U.S. at 26).

Here, Officer Meola did not conduct a typical frisk for weapons. Instead, he reached immediately for the book-shaped bulge hidden under Ms. Moreno's clothing. In isolation, this would seem to be a search for contraband rather than a search borne out of concern for officer safety. Indeed, one wonders how touching a suspected bomb would make anyone—let alone Officer Meola—safer. The magistrate judge who presided over the suppression hearing was "highly skeptical that Meola's touching of the bulge on Defendant was actually a pat-down search for weapons." I share this skepticism. We cannot, however, consider the officer's subjective intent, and the overall circumstances here objectively justify a concern for officer safety.

I recognize that United States v. Jones, 254 F.3d 692 (8th Cir. 2001), United States v. Eustaquio, 198 F.3d 1068 (8th Cir. 1999), and United States v. Tovar-Valdivia, 193 F.3d 1025 (8th Cir. 1999) share some similarities with the present case and offer some support to Ms. Moreno's position. But while they remain controlling precedent under their facts, I join the court in finding those cases distinguishable here. Given the numerous facts indicating drug trafficking, Ms. Moreno's evasive conduct in concealing the suspicious bulge, and the totality of the attendant circumstances, the protective frisk was justified.

That said, the court's opinion should not be read as giving officers carte blanche to conduct warrantless protective searches of travelers based on general concerns about terrorism. After all, a hat, a shoe, or a vest, as well as a purse, a suitcase, a briefcase, or a duffle bag could just as easily conceal a bomb as a book-shaped bulge under the clothing of a woman at an Omaha bus station. The Fourth

Amendment's protection is not so illusory as to permit warrantless searches based on general security concerns. The present case does not alter this fact.

_____