# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-1967
_____

United States of America

*Plaintiff - Appellee*

v.

Tanner Jo Halverson-Weese, also known as Tanner Jo Halverson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa
_____

Submitted: November 18, 2021
Filed: April 7, 2022
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Tanner Jo Halverson-Weese pled guilty to drug and gun charges. Before he pled guilty, the district court[1] denied Halverson-Weese's motion to suppress evidence. On appeal, Halverson-Weese challenges this denial and argues his sentence is substantively unreasonable. We affirm.

___

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

# I. Background

In January 2020, Marshalltown Police Department Sergeant Casee Veren conducted a traffic stop after observing a car driving with a non-operational brake light. Ana Martinez, the registered owner of the vehicle, was in the driver's seat. As Veren approached the car, she recognized Halverson-Weese, the passenger, from a Marshall County Sheriff's Officer Safety Bulletin ("Bulletin") issued the day before. According to the Bulletin, Halverson-Weese was suspected to be "traveling armed with a handgun that he keeps in his waistband."

Officer Logan Wolf joined Veren on the scene. As Veren returned to her patrol car to write a traffic ticket, she asked Wolf to watch Halverson-Weese's midsection because she saw him conceal something in his lap, under his hands. As he waited, Wolf noticed Halverson-Weese covering a bulky item in the front pocket of his sweatshirt and taking labored breaths.

Lieutenant Richard Bellile arrived on the scene. Bellile ordered Halverson-Weese to step out of the car. Halverson-Weese removed his seatbelt, fumbled with the strap of a camouflage satchel, and then reached behind his left hip with his left hand. Wolf ordered Halverson-Weese to keep his hands up and get out of the car. Ignoring this command, Halverson-Weese continued to move around the front seat without reaching for the door handle. Suspicious of his actions, Wolf and Bellile grabbed Halverson-Weese's hands and left arm through the open window. Bellile ordered him to open the car door with his right hand and get out. Halverson-Weese complied. Bellile did not open the camouflage satchel but, when he moved it from the passenger seat to the driver's seat, noticed it was heavy and believed he felt the handle of a gun inside of it.

For officer safety reasons, Wolf handcuffed Halverson-Weese. Wolf said he was concerned Halverson-Weese was carrying something in his sweatshirt. Halverson-Weese denied he was carrying anything but told Wolf he could check.

Wolf indeed checked and found a pink stun gun and a blue lighter in Halverson-Weese's sweatshirt pocket. Wolf seized the items and, on the basis of Halverson-Weese's interference with official acts, placed him in the back of the squad car. Prior to transporting him to jail, Wolf searched Halverson-Weese a second time and found $2,280 in his hand.

Martinez was also arrested for interference with official acts, and officers towed Martinez's car to the police impound lot. The officers informed the Mid Iowa Drug Task Force ("MIDTF") of the traffic stop. Law enforcement applied for a warrant to search Martinez's car. A magistrate judge for the Iowa District Court of Marshall County issued a warrant to search the car. During a search of the car, law enforcement found two handguns and methamphetamine stored in the camouflage satchel.

A federal grand jury indicted Halverson-Weese on three counts: intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Halverson-Weese moved to suppress the evidence officers discovered during the search of his person and Martinez's car. Following a hearing, the district court denied his motion.

Halverson-Weese then pled guilty to the charges of intent to distribute a controlled substance and possession of a firearm in furtherance of a drug trafficking crime. By the terms of the written plea agreement, the government dropped the remaining charge. The plea agreement reserved Halverson-Weese's right to appeal the district court's denial of his motion to suppress, as well as his sentence.

At sentencing, Halverson-Weese asked the district court to impose a statutory minimum sentence on both counts, totaling 180 months of imprisonment, stressing mitigating factors in the record. Specifically, Halverson-Weese emphasized the facts that his mother exposed him to drugs starting at the age of ten, he experienced difficult family issues throughout his life, he had a history of drug abuse and needed long term drug treatment, and he was mentally ill. The district court considered these factors and sentenced Halverson-Weese to 211 months of imprisonment, the bottom of the recommended United States Sentencing Guidelines ("Guidelines") range.

## II. Analysis

Halverson-Weese now appeals the district court's denial of his motion to suppress and his sentence.

### A. Motion to Suppress

We first address the district court's denial of Halverson-Weese's motion to suppress. "We review the district court's legal conclusions *de novo* and its findings of fact for clear error." *United States v. Ricker*, 983 F.3d 987, 992 (8th Cir. 2020).

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Within the bounds of the Fourth Amendment, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *accord United States v. Haynes*, 958 F.3d 709, 714 (8th Cir. 2020). Once a passenger is out of the vehicle, officers may conduct a protective pat down search for weapons if they have an objectively reasonable suspicion the person is armed and presently dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 330–32 (2009); *United States v. Robinson*, 982 F.3d 1181, 1185 (8th Cir. 2020). Such an investigatory, or *Terry* stop, is valid only if police officers can "point to specific and articulable facts

which, taken together with rational inferences from those facts, reasonably warrant" a search. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

If a *Terry* stop "lasts for an unreasonably long time or if officers use unreasonable force," the stop may become an arrest requiring probable cause. *United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010) (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). However, officers may take any measures during a *Terry* stop that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *Id.* (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)).

Halverson-Weese argues the search of his person was unlawful first because officers lacked reasonable suspicion to conduct a protective search during the traffic stop, and second because the stop became a de facto arrest when the officers restrained him, requiring probable cause to search.

## 1. Reasonable Suspicion

Halverson-Weese contends the officers lacked reasonable suspicion to order him from the vehicle and pat him down during the traffic stop.

We disagree. "In determining whether an officer had reasonable suspicion based on specific, articulable facts, we 'look at the totality of the circumstances, allowing officers to draw on their experience and training.'" *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013) (quoting *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008)). We conclude the totality of the circumstances here justified Wolf's protective search of Halverson-Weese. First, the officers identified Halverson-Weese from the Bulletin stating he was armed and dangerous. Second, Halverson-Weese concealed something bulky in his lap during the stop, which could have been a weapon. Third, Halverson-Weese made furtive movements while seated in the car. Finally, Halverson-Weese refused to comply with officers' orders during the stop.

Halverson-Weese claims the Bulletin cannot support reasonable suspicion here because "[t]here was no information provided that would have established the reliability of the information provided or corroborating it." Not so. The Bulletin's reliability was facially apparent: it was issued on the Marshall County Sheriff's Office letterhead and states the information was received by MIDTF. The officers' reliance on the Bulletin was sufficient for reasonable suspicion that Halverson-Weese might be armed and dangerous. An officer bulletin or flyer can provide reasonable suspicion for officers to conduct a search if the bulletin was "issued on the basis of articulable facts supporting a reasonable suspicion[.]" *Hensley*, 469 U.S. at 232; *accord United States v. Trogdon*, 789 F.3d 907, 910–11 (8th Cir. 2015) (stating officers may take bulletins into account when determining whether a suspect might be armed). Here, the Bulletin provided Veren reasonable suspicion that Halverson-Weese was traveling with a handgun in his waistband. *See Trogdon*, 789 F.3d at 910 ("The officer need not know for certain that the suspect is armed; instead, a search is permitted 'if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" (quoting *United States v. Horton*, 611 F.3d 936, 941 (8th Cir. 2010))).

Other evidence further supported the officers' reasonable suspicion. The officers observed Halverson-Weese concealing something bulky in his lap. *See United States v. Moreno*, 988 F.3d 1027, 1031–32 (8th Cir. 2021) (finding an officer had reasonable suspicion to perform a protective search after observing a suspect attempting to conceal a bulge underneath clothing). Halverson-Weese also refused to comply with the officers' orders to get out of the car and made furtive movements while seated in the car. Based upon these circumstances, the officers had reasonable suspicion to search Halverson-Weese.

## 2. De Facto Arrest

Halverson-Weese contends the officers placed him under de facto arrest without probable cause in violation of *Terry* when handcuffing him. He avers that the standard of any further search of his person was elevated from reasonable

suspicion to probable cause when the officers restrained him before arresting him. "A de facto arrest occurs when the officer's conduct is more intrusive than necessary for a *Terry* investigative stop." *United States v. Sanford*, 813 F.3d 708, 712–13 (8th Cir. 2016). An investigative stop may become an arrest, thereby "requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." *Id.* at 713 (quoting *Newell*, 596 F.3d at 879).

Use of handcuffs, however, does not automatically turn an investigative stop into a de facto arrest. Officers may use handcuffs during an investigative stop if they have "some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose[.]" *Pollreis v. Marzolf*, 9 F.4th 737, 745 (8th Cir. 2021) (alteration in original) (quoting *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011)). To determine the reasonableness of such measures, we analyze "whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Sanford*, 813 F.3d at 713 (quoting *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014)).

The officers' reasonable belief that Halverson-Weese was carrying weapons, based upon the Bulletin and Halverson-Weese's conduct during the stop, allowed them to handcuff Halverson-Weese during the stop for officer safety without resulting in a de facto arrest. *See Waters v. Madson*, 921 F.3d 725, 737–38 (8th Cir. 2019) (concluding use of handcuffs during a stop was permissible because the defendant disobeyed multiple commands to step out of the vehicle). Accordingly, the use of handcuffs did not transform the investigatory stop into an arrest.

We therefore affirm the district court's denial of Halverson-Weese's motion to suppress.

## B. Sentence

Halverson-Weese next appeals the substantive reasonableness of his sentence. "We review the substantive reasonableness of a sentence under a

deferential abuse-of-discretion standard." *United States v. Garcia*, 946 F.3d 413, 419 (8th Cir. 2019) (quoting *United States v. St. Claire*, 831 F.3d 1039, 1043 (8th Cir. 2016)). Sentences within the Guidelines range are presumed substantively reasonable. *Id.* "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *St. Claire*, 831 F.3d at 1043 (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)).

Halverson-Weese admits the district court considered the mitigating factors he presented. He argues instead that the district court gave too much weight to the aggravating factors. But "[t]he district court has wide latitude to weigh the [18 U.S.C.] § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Ballard*, 872 F.3d 883, 885 (8th Cir. 2017) (quoting *United States v. Borromeo*, 657 F.3d 754, 757 (8th Cir. 2011)).

Here, the district court did not abuse its discretion by sentencing Halverson-Weese at the bottom of the Guidelines range. "[T]he district court has discretion in determining how to weigh sentencing factors, and on appeal a defendant 'must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors.'" *United States v. DaCruz-Mendes*, 970 F.3d 904, 910 (8th Cir. 2020) (quoting *United States v. Long*, 906 F.3d 720, 727 (8th Cir. 2018)). The district court sentenced Halverson-Weese at the bottom of the Guidelines range, and the relative weight it set for each of the § 3553(a) factors in determining the appropriate sentence is squarely within its discretion. Therefore, we conclude there was no abuse of discretion.

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Halverson-Weese's motion to suppress and his sentence.

_____