# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3665
_____

United States of America

*Plaintiff - Appellee*

v.

Wesley T. Vavra

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 21, 2024
Filed: February 4, 2025
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Wesley T. Vavra arrived at a meeting place carrying a stuffed animal, sweet tarts, and two bottles of flavored sex gel. He thought it was the residence of a father and his 8-year-old, "Emma." In fact, the "father" was an undercover officer; "Emma" did not exist. The government charged Vavra with one count of attempted

coercion and enticement of a minor.  A jury found him guilty.  The district court[1] sentenced him to 235 months in prison.  He appeals the conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On May 16, 2022, Deputy Charles Miller posted on a chatting app:  "Open fam playdates anyone?"  The same day, Vavra replied:  "What do you have in mind?"  Miller presented himself as the single father of one daughter.  Vavra quickly showed interest, asking if she was pretty, how old she was, and what type of sexual activity she engaged in and enjoyed.  Miller replied she was "beautiful," 8 years old, and had experienced various sexual acts.

Vavra often reached back out to Miller.  On June 6, Vavra replied to a different post by Miller that included an image of a young girl and the text:  "Daddy-daughter summer breaks are the best!"  Vavra identified himself by his old username, adding that he had a new phone so had lost his old conversations.  Later that day, Vavra brought up the idea of meeting Miller and the daughter.  He repeatedly assured Miller that a meeting, and anything happening between Vavra and the daughter, was up to Miller and her.  On June 13, Vavra and Miller began texting.  Replying to texts about a phone call, Vavra stated:  "Still a bit nervous though."  Miller texted that a phone call was up to Vavra.  On June 16, Miller and Vavra spoke by phone, with Miller saying that the daughter was autistic and nonverbal.

On June 24, after a week of intermittent texting with no mention of a meeting, Vavra texted Miller.  While texting, Miller asked Vavra:  "Have you had more time to think about our conversations and whether you want to move forward? I have and I'm ready if you are."  Vavra texted that he was ready to take the next step, asking what Miller wanted it to be.  Miller replied he wanted to talk about Vavra's "first

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

interaction with Emma," to "give it the best chance of making her feel comfortable and for her to understand the nature of the relationship." Miller added: "I've already started explaining it to her to lay some groundwork. So far so good." Miller and Vavra had a second call. Miller suggested meeting at his house, Vavra bringing candy, and using flavored sex gel.

On July 7, after two weeks of texting without planning a meeting, Vavra again brought it up. Two days later, he asked how "Emma" was doing and if Miller would like him to come over. On July 11, Miller and Vavra texted about Vavra coming to Miller's house. Vavra texted Miller that whether they met "fully clothed or naked is up to you." Miller replied that being naked would make "Emma" "more comfortable," after her bath, and she would "catch on more quickly and be more likely to initiate stuff." The conversation turned graphic, with Vavra asking explicitly how "Emma" would behave during sexual activity with him. He asked to meet that Saturday, early afternoon, adding that he did not know how early "Emma" bathed. Miller replied she could take a bath "whenever." On July 13, Vavra asked if she knew that he was coming over that Saturday. Miller replied, "I haven't said much about it yet in case you change your mind . . . ." Vavra texted that he was still on for Saturday afternoon.

Vavra asked, explicitly, how "Emma" would let him know that he could touch her. Miller, reiterating the idea of using flavored gel, responded that "most likely the gel will get her mind on that track." Miller also encouraged bringing a stuffed animal and candy. On Friday, Vavra texted that he was still planning on coming but was "really nervous." He worried that Miller was connected to law enforcement. Miller replied he had no connection to law enforcement, but he gave Vavra another opportunity not to go forward. Vavra confirmed: "I want to meet you and Emma."

On Saturday morning, July 16, after two months of on-again, off-again communications, Vavra texted to check on the correct kind of gel. He asked for Miller's address. On Saturday afternoon, Vavra arrived at the address with a stuffed animal, sweet tarts, and two sex gels of flavors that Miller recommended.

The government charged Vavra with one count of attempted coercion and enticement of a minor. During the jury trial, the district court denied Vavra's motion for a judgment of acquittal. **Fed. R. Crim Pro. 29(a)**. The court instructed the jury on entrapment. After the guilty verdict, Vavra again moved for a judgment of acquittal, which the district court denied. **Fed. R. Crim. Pro. 29(c)**. Refusing to grant a downward variance, the district court sentenced Vavra to 235 months. Vavra appeals.

II.

A court "must enter a judgment of acquittal of any offense for which the evidence is insufficient." **Fed. R. Crim. Pro. 29(a)**. This court reviews de novo the denial of a motion for a judgment of acquittal. *United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir. 2010). This court's standard of review is "quite strict." *United States v. Blair*, 93 F.4th 1080, 1085 (8th Cir. 2024). This court reverses a denial "only if no reasonable jury could have found proof of guilt beyond a reasonable doubt." *Hernandez-Mendoza*, 600 F.3d at 977. This court "must determine whether 'any rational trier of fact could have found' that the evidence established the essential elements of the charged crime beyond a reasonable doubt." *United States v. Aponte*, 619 F.3d 799, 804 (8th Cir. 2010), *quoting* *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court views the evidence "in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Kempter*, 29 F.4th 960, 965 (8th Cir. 2022).

Vavra argues that the evidence was insufficient for a jury to find him guilty of attempted coercion and enticement of a minor. Federal law provides: "Whoever, using . . . any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*, shall be fined under this title and imprisoned not less than 10 years or for life." **18 U.S.C. § 2422(b)** (emphasis

added). To convict, the government must prove that a defendant (1) "used a facility of interstate commerce, such as the internet or telephone system"; (2) "knowingly used the facility of interstate commerce with intent to persuade or entice a person to engage in illegal sexual activity"; and (3) "believed that the person he sought to persuade or entice was under the age of eighteen." ***United States v. Joiner***, 39 F.4th 1003, 1008 (8th Cir. 2022). Attempt requires intent to commit the offense and conduct that is a "substantial step" toward its commission. ***United States v. Rajab***, 23 F.4th 793, 796 (8th Cir. 2022). Vavra argues that no rational jury could have concluded either that he attempted to "persuade or entice" or, if he did, that any attempt was to a minor.

According to Vavra, no reasonable jury could understand his communications with Miller as an attempt to persuade, induce, entice, or coerce. *See* **18 U.S.C. § 2422(b)**. As Vavra characterizes the communications, he was reluctant, but Miller pushed events forward. Vavra emphasizes that Miller originated the posts on the chatting app, suggested and initiated the phone calls, and encouraged him to get the stuffed animal, candy, and gel. Vavra also stresses that he often expressed ambivalence about meeting "Emma" and nervousness about moving forward.

To the contrary, a reasonable jury could focus on the facts that: Vavra repeatedly reinitiated communications with Miller; Vavra first brought up (and continued to bring up) the idea of meeting both Miller and "Emma"; and Vavra made statements such as "I am all about pleasuring my partner over my own pleasure." A reasonable jury might interpret Vavra's expressions of ambivalence or hesitancy as trying to portray himself to Miller as an appropriate person to introduce to "Emma" for sexual activity. Deputy Miller testified that, in his experience and training, Vavra's messages were grooming techniques. This court does not "assess the credibility of the witnesses." ***United States v. Lundstrom***, 880 F.3d 423, 436 (8th Cir. 2018). A reasonable jury also could have interpreted Vavra's nervousness as stemming from a fear of law enforcement. A reasonable jury could have concluded Vavra was attempting to persuade or entice.

Vavra next argues that the evidence was insufficient to prove he sought to entice a person under the age of 18. As he acknowledges, section 2422(b) does not require communication with an actual minor. *Rajab*, 23 F.4th at 796. *See e.g.*, *Joiner*, 39 F.4th at 1006; *United States v. Zupnik*, 989 F.3d 649, 651–52 (8th Cir. 2021); *United States v. Myers*, 575 F.3d 801, 803 (8th Cir. 2009). What matters is his intent to entice a minor. A reasonable jury could conclude that he believed Miller that "Emma" was 8 years old.

Vavra insists he never communicated with "Emma," only with Miller. However, he can violate section 2422(b) even when communicating directly with an adult, if the adult is an "intermediary" between himself and the minor. *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007). Section 2422(b) does not exempt "sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and obey her parents." *Id.* While acknowledging this, Vavra argues that a defendant must try to use the intermediary to communicate with the minor. *See id.* (describing the defendant asking the intermediary to "tell the girls about his wishes" and to "instruct the girls not to tell anyone what he planned to do to them"). *See also United States v. Willins*, 992 F.3d 723, 728 (8th Cir. 2021) (noting that defendant tried to call the minor). Vavra reasons that he must have attempted to have an effect "on the child's mind." *United States v. McMillan*, 744 F.3d 1033, 1036 (7th Cir. 2014).

A reasonable jury could conclude that he was attempting to use Miller to communicate with "Emma," because he intended for Miller to communicate with "Emma" about him. He told Miller that the decision to meet "would be totally up to you two." Later, Miller told Vavra: "I've already started explaining it to her to lay some groundwork. So far so good." Vavra even asked Miller if "Emma" knew he might be coming over. *See United States v. Roman*, 795 F.3d 511, 514 (6th Cir. 2015) (upholding an indictment for section 2422(b) under similar facts).

Also, a reasonable jury could conclude that Vavra intended to use Miller to prepare "Emma" for a meeting. Vavra said he wanted to meet "Emma." Miller

suggested bathing "Emma" before Vavra arrived, leaving her naked while Vavra was there in order "for her to understand the nature of the relationship." In planning his arrival time, Vavra asked what time "Emma" bathed. In preparing "Emma" for sexual activity with Vavra, Miller would act as an intermediary between Vavra and "Emma." *Cf. United States v. Hensley*, 982 F.3d 1147, 1155 (8th Cir. 2020) (holding there was sufficient evidence to convict a defendant who planned with the supposed father of a "minor" to meet them for sex with the "minor" in exchange for money); *Spurlock*, 495 F.3d at 1014 (noting that defendant "made plans" with the supposed mother "to meet at a motel . . . where he would have sex with her and her daughters"). Vavra "arranged for and traveled to a potential meeting," a substantial step. *Hensley*, 982 F.3d at 1155. *See also Spurlock*, 495 F.3d at 1014 (stating that defendant's online communications with the supposed mother, "necessary to the consummation of the crime," were a substantial step). A reasonable jury could find Vavra attempted to entice a minor.

Regardless, Vavra argues that there was insufficient evidence for the jury to conclude that he was not entrapped by Miller. Entrapment has two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *United States v. Herbst*, 666 F.3d 504, 511 (8th Cir. 2012). Inducement "must consist of something more than an opportunity to break the law." *Myers*, 575 F.3d at 806. It is "well settled that the government may use artifice, stratagem, and undercover agents in its pursuit of criminals." *Id.*

A reasonable jury could conclude that Miller did not induce Vavra to commit the crime. *See United States v. Hanapel*, 112 F.4th 539, 544 (8th Cir. 2024). Generally, evidence that supports inducement includes the government making the initial contact, introducing the topics of sex and meeting in person, influencing the defendant's behavior by portraying minors as sexually precocious, or the effect of photos sent by the government. *Myers*, 575 F.3d at 806. Here, a reasonable jury could have considered, among other evidence, that:

-7-

- Vavra responded to Miller's posts, beginning their conversations;
- Vavra quickly showed interest in Miller's daughter, asking about her appearance, age, and sexual activity (specifically, "does she like it when you watch her with another older guy?" and "What all do you/her do?");
- Vavra reacted to the daughter's age by saying: "Really thats really hot. Kinda a fetish of mine";
- Vavra, not Miller, first brought up a meeting;
- None of the photos Miller posted or sent were sexually explicit;
- Vavra frequently reinitiated communication after the conversation went dormant, including after getting a new phone; and
- Miller gave Vavra multiple opportunities not to continue (such as by telling Vavra on separate occasions that "we probably aren't compatible"; that it was "fine" if Vavra did not want to call; that Miller had not said much to "Emma" about Vavra coming over "in case you change your mind or for some reason can't come over"; that "I totally understand if you decide this isn't right for you"; and that "If you aren't sure I recommend you don't [come over]"). But Vavra pressed ahead anyway.

Miller "did not threaten, coerce, or psychologically manipulate" Vavra. *Id.* at 807. A reasonable jury could conclude that Miller did not entrap Vavra.

III.

Vavra appeals his sentence of 235 months in prison. This court uses "a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "This court reviews sentences in two steps: first, for significant procedural error; and if there is none, for substantive reasonableness." *United States v. Williams*, 624 F.3d 889, 896 (8th Cir. 2010). "Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3353(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.'" *Id.* (emphasis omitted), *quoting Gall v. United States*, 552 U.S. 38, 51

(2007). For substantive reasonableness, a district court abuses its discretion when it (1) "fails to consider a relevant factor that should have received significant weight"; (2) "gives significant weight to an improper or irrelevant factor"; or (3) "considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* at 896–97. Reviewing substantive reasonableness, this court takes into account the totality of the circumstances. *United States v. Young*, 644 F.3d 757, 762 (8th Cir. 2011), *citing Feemster*, 572 F.3d at 461. This court may apply a presumption of reasonableness to a sentence within the Guidelines range. *Feemster*, 572 F.3d at 461. It is the "unusual case" when this court reverses a district court's sentence as substantively unreasonable. *Id.* at 464.

This court presumes the district court's sentence here was reasonable, so the burden is on Vavra to show that his sentence should have been lower. *See United States v. Goodale*, 738 F.3d 917, 926 (8th Cir. 2013). At sentencing, Vavra moved for a downward variance from the Guidelines range of 235 to 293 months. The district court imposed a sentence of 235 months. This court reviews the denial of a downward variance by reviewing the substantive reasonableness of the sentence. *United States v. Angeles-Moctezuma*, 927 F.3d 1033, 1037 (8th Cir. 2019). Vavra asserts that his sentence is "greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). He argues the district court focused too much on the "nature and circumstances" of his offense and not enough on the "history and characteristics of the defendant." **18 U.S.C. § 3553(a)(1)**.

But a district court "has wide latitude to weigh the 18 U.S.C. § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Halverson-Weese*, 30 F.4th 760, 766 (8th Cir. 2022) (cleaned up). A defendant "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors." *Id.* At sentencing, the district court considered Vavra's lack of any criminal history but gave greater weight to the nature of the offense: "I understand the lack of any criminal history here, but just the nature of the offense and what you, Mr. Vavra, were willing to do, talked about doing, prepared to do and showed up to

do, is reprehensible." This choice by the district court is "squarely within its discretion." *Id.* Vavra fails to rebut the presumption that his sentence is reasonable.

Vavra emphasizes there was no actual minor involved here, only an adult posing as a man discussing sexual activity with his daughter. However, the district court stated: "Whether or not it was a real eight-year-old-child, if it had been an eight-year-old child you would have gone through with it . . . ." *Cf. United States v. Strubberg*, 929 F.3d 969, 980 (8th Cir. 2019) (upholding, on plain error review, conditions added to a defendant's sentence even though he never had contact with an actual minor); *United States v. Bauer*, 626 F.3d 1004, 1009–10 (8th Cir. 2010) (upholding a sentence for attempted receipt of child pornography in a case where the defendant was actually talking with an undercover law enforcement officer and never received any child pornography). The district court did not abuse its discretion in sentencing Vavra.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____